Eva Bobbie BARRINGTON, Appellant,

v.

Elray BARRINGTON, Appellee.

No. 6860.

Court of Civil Appeals of Texas.

Texarkana.

April 12, 1956.

Rehearing Denied May 10, 1956.

Fowler & Tunnell, Ben Goodwin, Tyler, for appellant.

Lewis & Chandler, Jacksonville, for appellee.

FANNING, Justice.

Elray Barrington sued his wife, Eva Bobbie Barrington, for divorce and for adjudication of his separate and community property rights. In a trial before the court without the intervention of a jury judgment was entered granting plaintiff, Elray Barrington, a divorce from defendant, Eva Bobbie Barrington, and the property rights of the parties were adjudicated and the community property of the parties was partitioned by such judgment. Findings of fact and conclusions of law were filed by the trial court. Defendant, Eva Bobbie Barrington, has appealed and complains of only one finding and conclusion of the trial court.

Appellant presents only one point which point is as follows:

"Point 1. The District Court erred in finding that during the period of the marriage of plaintiff and defendant, no community funds of the plaintiff and defendant were invested in the Barrington Tire Shop business, and in concluding that all of the stock on hand and machinery and equipment used in the operation of the Barrington Tire Shop business were the separate property of the plaintiff, Elray Barrington, for the reason that said finding and conclusion is not substantiated by the evidence."

Appellee by his counter-point 1 contends in essence that the trial court correctly rendered judgment for plaintiff awarding plaintiff judgment for title and possession of all the properties in question, except the specific property which was awarded to the defendant because (1) and (2) the finding of the trial court that no community funds of the parties were invested in the Barrington Tire Shop business and that all the stock on hand and machinery and equipment used in the operation of such business were the separate property of plaintiff, Elray Barrington, was conclusively supported by the preponderance of the evidence, and (3):

"The Court having undertaken in the light of the evidence to equitably partition the community estate existing between the parties and defendant not having contested the judgment of the Court partitioning the community estate between the parties as being inequitable and unjust and not a just and fair and proper division of the estate between the parties, and only attacking the findings of the Court with reference to the investment of the community funds in the Barrington Tire Shop business such presents no question, the determination of which in law would overturn the judgment of the Trial Court."

Plaintiff and defendant were married March 25, 1954, separated February 1, 1955, the cause was tried March 5, 1955, and judgment granting the divorce and adjusting the property rights of the parties was rendered May 11, 1955. The court in its judgment considered and balanced the equities between the parties, stating in this respect:

"The Court having considered the advancements of each party out of their separate funds made toward the purchase of the real estate heretofore re-

ferred to as Lot 16 in Block 61, (the residence of the parties) such sum of $400.00 as separate property of defendant and cross-plaintiff, and such sum of $621.50 as separate property of plaintiff and cross-defendant having been duly considered and accounted for and such equities adjusted, said real estate is adjudicated to be owned equally by the said parties, plaintiff and cross-defendant and defendant and cross-plaintiff, subject, however, to the indebtedness now against such property. *The Court having considered cash on hand and in banks at the date of the trial and having considered same to be community property of the parties, which is fully accounted for hereinafter in a partition and division of the property between the parties, and in such manner, the equities between the parties having been considered and balanced, including an allowance for defendant and cross-plaintiff from the time of the trial up until the date of this judgment such that she will, during such period of time, receive her equities in any income or earnings by plaintiff and cross-defendant during such period of time."* (Emphasis and interpolation ours.)

In this judgment the court awarded to defendant an undivided ½ interest in the community home of the parties, subject to outstanding indebtedness, taxes and charges against the property, and awarded to defendant certain items of community personal property including an automobile, television set, dinette suite and bedroom suite, subject to the indebtedness against such items, etc., and awarded to her certain items of personal property of the reasonable fair cash market value of $685.00 which had been the separate property of plaintiff which items had been converted to the own use of defendant or had been disposed of by defendant, and the sum of $280 in cash was also awarded to defendant. The judgment decreed to the plaintiff a ½ interest in the community home, subject to indebtedness, etc., decreed that Lots 1 and 2 in Block 53 of the City of Jacksonville,

Cherokee County, Texas, (the Barrington Tire Shop) was the separate property of plaintiff, and the court awarded all other properties, real, personal and mixed, which would include the stock, fixtures, appliances, etc., in the Barrington Tire Shop to plaintiff, all of which was subject to outstanding indebtedness, etc.

The trial court filed the following findings of fact and conclusions of law:

· "Findings of Fact

I. That Plaintiff and Defendant were married March 25, A.D.1954.

II. That at the date of marriage of Plaintiff and Defendant, Plaintiff owned separate property of a net value of $15,985.18, of which sum $3,739.77 was cash in the business account of the Barrington Tire Shop, the separate property of the Plaintiff, and which separate property consisted of, among other items, Lots 1 and 2 in Block 53 in the City of Jacksonville, Cherokee County, Texas, together with the business being operated thereon, known as Barrington Tire Shop.

III. That during the marriage of Plaintiff and Defendant they purchased Lot 16 in Block 161 of the City of Jacksonville, Cherokee County, Texas, Plaintiff contributing of his separate estate toward the down payment thereon $621.50, and the Defendant contributed of her separate estate toward the down payment thereon $400.00. That such property is encumbered by a First Mortgage in the sum of $3,534.90.

IV. That there was purchased during the marriage of Plaintiff and Defendant an automobile and various items of personal property used in connection with the home and pleasure of Plaintiff and Defendant, toward which purchase the Plaintiff contributed $349.00 of his separate estate and such property is now encumbered by purchase money liens secured by mortgage on the same.

V. That the personal property used in connection with the home of Plaintiff and Defendant, and, for their pleasure as well as the personal automobile purchased dur-

ing the marriage of Plaintiff and Defendant, and toward all of which the Plaintiff contributed of his separate estate the sum of $349.00, is of a reasonable fair cash market value in excess of the debts secured by mortgages existing against the same.

VI. That the Defendant has in her possession all of the personal property purchased in connection with the use of their home during the marriage and for their pleasure and convenience as well as the personal automobile purchased during the marriage of Plaintiff and Defendant.

VII. That Defendant had in her possession at the date of the separation of the parties, Plaintiff and Defendant, and has now in her possession or has placed the same beyond recovery by Plaintiff; the separate personal property of Plaintiff of the reasonable fair cash market value of $685.-00 and has failed and refused to account to Plaintiff therefor.

VIII. That at the date the decree of divorce was entered herein, the separate property of the Plaintiff, consisting of, among other things, Lots 1 and 2 in Block 53 in the City of Jacksonville, Cherokee County, Texas, and the business being operated thereon, known as Barrington Tire Shop, had a net value of $14,684.57, of which sum $1,931.08 was cash in the business account of Barrington Tire Shop.

IX. That during the marriage of Plaintiff and Defendant the Barrington Tire Shop business was conducted in a normal manner and no separate funds of the Defendant were invested therein.

X. That during the period of marriage of Plaintiff and Defendant no community funds of the Plaintiff and Defendant were invested in the Barrington Tire Shop business.

XI. That the cash account of the Barrington Tire Shop business was at all times during the period of marriage of Plaintiff and Defendant carried in a separate account and no funds were placed in such account other than that derived directly out of the operation of the business.

XII. That regular withdrawals were made out of the cash account of the Barrington Tire Shop account during the period of the marriage of Plaintiff and Defendant, for their support, maintenance, and pleasure, as well as the purchase of a home and furnishings of a home, except as herein indicated.

XIII. At no period during the marriage of Plaintiff and Defendant did the earnings of Barrington Tire Shop equal or exceed the regular withdrawals therefrom.

XIV. That there was withdrawn from the Barrington Tire Shop account during the period of the marriage of Plaintiff and Defendant $1,140.41 in excess of the earnings of such business during such period.

XV. That the personal property purchased during the marriage of Plaintiff and Defendant for their pleasure and in furnishing their home, including the personal automobile, all of which is now in the possession of the Defendant, and toward the purchase of which Plaintiff contributed of his separate estate the sum of $349.00, has a reasonable fair cash market value in excess of the purchase money notes secured by mortgage against the same, outstanding at the date of the Judgment.

XVI. There was accumulated a cash reserve of $389.22 on life insurance policies on life of Plaintiff, during such marriage period.

XVII. That Defendant is guilty of excesses and cruel treatment toward Plaintiff during such marriage period of such a nature as to render the living together of Plaintiff and Defendant insupportable.

## Conclusions of Law

I. The Court concludes as a matter of law that the evidence admitted is sufficient grounds for divorce to Plaintiff under Article 4629, Section I, R.C.S. of Texas, Vernon's Ann.Civ.St. art. 4629(1).

II. The Court concludes as a matter of law that the money of Barrington Tire Shop on deposit in First National Bank of Jack-

sonville, Texas, was so commingled with community funds of the marriage such that the Court in reaching a judgment considered same community funds of said marriage.

III. The Court concludes that the community property of the parties should be had and held by the parties as decreed in the Judgment heretofore entered."

In Farrow v. Farrow, Tex.Civ.App., 238 S.W.2d 255, 256, a divorce and property division suit, the court held that the evidence failed to show any such commingling of the separate and community estates of the parties as would require the enforcement of a forfeiture of the husband's separate estate. The facts in the Farrow case, supra, reveal that at the time of the marriage the husband (appellee) had on deposit in various banks the sum of $29,602.76 which was his separate property and also owned certain mineral interests as his separate property. His wife (appellant) owned a house and lot as her separate property which she sold after the marriage for $3,000, which money was deposited in one of the husband's bank accounts. Farrow's business activity during the marriage was buying and selling real estate, livestock, and their interim management. He kept proper records of these transactions. Actual profits made by Farrow in all of his trades were about $1,000. Other income during the marriage was a $2,000 oil lease bonus on his separate lands and some small collection of rent and interest. The trial court in the Farrow case awarded the wife judgment for $4,500, being $3,000 separate funds owned by her and $1,500 for her interest in the community estate as well as certain personal property. We quote from the opinion of the Court of Civil Appeals in the Farrow case, supra, as follows:

"When appellee's assets were inventoried and appraised at the time of trial they had a value of $29,984, excluding the mineral interests, or about $300 more than he had at the time of marriage. This amount, however, included appellant's $3,000. Add the $1,500 awarded appellant for her community

interest *and it appears that the net result of the marriage to appellant, financially speaking, is a net loss of about $4,200.*

"These facts, in our opinion, fall far short of those required to enforce a forfeiture of appellee's separate estate under the commingling doctrine, some principles of which will now be stated.

"In Andrews v. Brown, Tex.Com. App., 10 S.W.2d 707, 709, cited with approval in Mooers v. Richardson Petroleum Co., 146 Tex. 174, 204 S.W.2d 606, the following appears:

"'"If a man mixes trust funds with his own," it is said, "the whole will be treated as trust property, except so far as he may be able to distinguish what is his own." * * * That principle seems to have recognition in most, if not all, American jurisdictions. * *

"'Analagous doctrines are part of the law of accession and specification * * *, and of confusion of goods * * *. The principle, we apprehend, is but a part of equity's declination to extricate the wrongdoer from self-imposed hard conditions, or to tax the innocent, where one of two not in pari delicto must suffer.'

"In 9 Tex.Jur. title Confusion of Goods, Sec. 2, we find these principles stated: 'An owner who wrongfully permits the property of another to become so intermingled and confused with his own property as to render impossible the identification of either is under the burden of disclosing such facts as will insure a fair division, and if he fails or refuses to do so, the combined property or its value will be awarded to the injured party. The rule applies where there has been an intermingling of cattle, community property or whatnot. There must be a wilful or wrongful invasion of right in order to induce the condign consequences of forfeiture. This doctrine of the law has often been discussed, and it may be considered as having been clearly and distinctly settled.'

"And in Section 3 thereof: ' * * * Again, if the goods are of the same nature and value and the portion of each owner is known, or if a division can be made of equal proportionate value,— as in the case of a mixture of corn, coffee, tea, wine or other article of the same kind and quality,—then each owner may claim his aliquot part.'

"There is no evidence here that appellee wrongfully confused appellant's money with his own. If she trusted him with its keep, as she apparently did, he has at all times preserved the trust.

* * * *One dollar has the same value as another and under the law there can be no commingling by the mixing of dollars when the number owned by each claimant is known.*

*"It is true that appellee changed the form of his separate estate frequently but this did not change its legal status, for the separate character of property is not affected by any number of changes and mutations in its form.* 23 Tex. Jur. p. 89.

"We, therefore, overrule appellant's contention that appellee's separate property has changed into community property." (Emphasis ours.)

In the case of Sibley v. Sibley, Tex.Civ. App., 286 S.W.2d 657, 659, it is stated:

"The presumption is that where funds are commingled so as to prevent their proper identity as separate or community funds, they must be held to be community funds. However, there are exceptions to the rule or presumption. In divorce proceedings our courts have found no difficulty in following separate funds through bank accounts. Farrow v. Farrow, Tex.Civ.App., 238 S.W.2d 255; Coggin v. Coggin, Tex. Civ.App., 204 S.W.2d 47. Equity impresses a resulting trust on such funds in favor of the wife and where a trustee draws checks on a fund in which trust funds are mingled with those of the trustee, the trustee is presumed to

have checked out his own money first, and is therefore an exception to the general rule. United States Fidelity & Guaranty Co. v. First National Bank, Tex.Civ.App., 81 S.W.2d 213; Continental Nat. Bank v. Weems, 69 Tex. 489, 6 S.W. 802, at page 805.

*"The community moneys in joint bank account of the parties are therefore presumed to have been drawn out first, before the separate moneys are withdrawn.* Edsall v. Edsall, Tex.Civ. App., 240 S.W.2d 424; Farrow v. Farrow, supra; Coggin v. Coggin, supra; *and since there were sufficient funds in the bank, at all times material here, to cover appellee's separate estate balance at the time of the divorce, such balance will be presumed to be her separate funds.* Point 1 is overruled. * * *

"As stated under point 1, the evidence disclosed that the balance in the bank account to the extent of $3,566.68 was the proceeds of the sale of appellee's separate property, and properly awarded to her by the trial court. Point 2 is overruled.

"For the reasons stated in passing on point 1, we cannot hold such funds lost their identity as her separate property. Point 2 is overruled.

"Point 3 asserts error in holding 89% of the farm to be appellee's separate property because the funds were so commingled that they lost their identity as separate property. For the reasons stated in passing on point 1, we cannot hold such funds lost their separate property classification. Point 3 is overruled.

*"Point 4 asserts the trial court erred 'in not charging the separate property, if any, of appellee with improvements made out of community funds.' Under the record in this case the trial court was, under Art. 4638, V.A.C.S., required to partition the properties of the parties in such manner as the court should deem equitable, with only the prohibition that neither party shall be*

*required to divest himself or herself of the title to real estate. Partitioning the property of the parties upon divorce is based upon equitable principles, considering all the facts and circumstances, limited only by the prohibition as to a forced divestiture of title to real property by either party.*

"As said by our Supreme Court in Ex parte Scott, 133 Tex. 1, 123 S.W.2d 306, at page 313: ' * * * This statute does not allow the divorce court to compel either party to the divorce action to divest himself or herself of the title to realty. As we construe it, Article 4638, supra, is mandatory in its provisions, and, under its terms, the District Court of Dallas County as between this husband and this wife, must decree a division of the property. Also, under this statute the division of the property does not have to be equal. The court can be controlled by what the facts may lead him to believe is just and right. * * *'

" * * * since the court may award the community property equitably, we cannot hold under the record here that the trial court abused his discretion in the manner in which he equitably partitioned the property. Point 4 is overruled." (Emphasis ours.)

In the case at bar it was undisputed that appellee, Elray Barrington, owned at the date of his marriage to appellant as his separate property certain real estate and personal property consisting of a tire-servicing and tire-rebuilding business with various equipment such as three retreading molds, one truck mold, two passenger car molds, four sectional units called vulcanizing molds, air compressors, tire spreaders, office equipment and various hand tools and stock on hand which business was known as Barrington Tire Shop. The business was operated as a going business in a normal manner during the coverture of the parties. Plaintiff had on hand $4,254.29 worth of new and used tires at the time of his marriage as his separate property and in

his business he sold new and used tires and serviced tires. As he sold these tires and serviced tires in his business he deposited the proceeds in his one bank account and he would use the money he received in his business to buy new stock. His stock turned over about five times during his coverture with defendant. On February 28, 1955, a few days before the divorce suit, his stock of merchandise of new and used tires on hand was of the value of $2,700, which was a decrease of $1,554.29 from his original stock. He also sold some of his old equipment and bought new equipment which was necessary in his business of remolding and recapping tires—however, he kept accurate records of all of these transactions as hereinafter more fully shown. During the marriage he sold two re-tread molds (which was his original separate property) for $1,050 which money was placed in his business bank account. During the marriage he bought a new re-tread mold, paid $160 down on it from the bank deposit and paid a few (8 or 9) monthly payments of $68 per month from his business bank account and owed a balance on it at the time of the dissolution of the marriage. During the marriage he also bought a tire changer for $189, paying for same out of the business bank account by check, also paid $75 out of said account on a cement spray machine, with an indebtedness still due against it at the time of the divorce, bought an air compressor on credit and made a few payments on it out of the business bank account as shown by the accountant's statement, and with an indebtedness still due against it at the time of the divorce, and also paid $350 out of said business account for a matrice. Mr. Barrington caused to be kept a complete and correct set of books with reference to such business by T. C. Wilson, Tax Service and Accounting Office, certified public accountants in Jacksonville, Texas. This office prepared inventory of this business in March 1954, five days after the marriage and another inventory as of February 28, 1955, the closing month immediately preceding the trial of March 5, 1955. The accountants also prepared a profit and loss statement in detail covering from March 1, 1954, through

March 1, 1955, and also prepared a net worth statement of Elray Barrington during a like period of time. All of these inventories, profit and loss statement and net worth statement, were introduced in evidence. The operation of the business of the Barrington Tire Shop and the income and disbursement of its earnings, was at no time invested, mixed or mingled with income or monies derived from any other source as only one bank account was maintained.

The inventory statement introduced in evidence showed that on March 31, 1954, Elray Barrington had total assets of $25,451.44 with liabilities of $9,466.26, leaving a net worth balance on that date of $15,985.18, which inventory further showed that on February 28, 1955, Elray Barrington had total assets of $21,638.13 (which was a reduction of his prior assets), with liabilities of $6,953.56 (which also shows a reduction from his prior liabilities, which included a reduction on a $3,750 business note to $1,000, making a $2,750 reduction in said note and also showed an increase in another business note of $659.95, and showed small reductions in some other notes) leaving, however, a net worth balance of $14,684.57 on February 28, 1955. The inventory statement, among other things, also shows that Mr. Barrington's deposit in the business bank account in question as of March 31, 1954, was the sum of $3,739.77, that on February 28, 1955, the amount of deposit in said business bank account was $1,931.08, which represented a decrease of $1,808.69 in the said bank account. This statement also shows that his stock and merchandise on hand during said time had shown a decrease of $1,554.29. We deem it unnecessary to discuss all the other items shown in the inventory statement as same may be found in the record, but we do point out that after all pertinent matters are considered the inventory statement shows that during the period of time covered Elray Barrington suffered a financial decrease or loss of $1,300.61. To this loss can also be added ½ of the $1,931.08 cash on deposit in the business account of the Barrington Tire Shop because the trial court in his

judgment partitioning the community property of the parties gave to appellant the benefit of having the $1,931.08 bank deposit considered as community property. (Appellee, however, has not attacked the finding and decree of the trial court giving Mrs. Barrington the benefit of having this sum of $1,931.08 being considered community property.)

The profit and loss statement with respect to the Barrington Tire Shop, introduced in evidence, covering from March 31, 1954, to March 1, 1955, shows that the earnings of the business for that period was $3,620.92, and that the withdrawals therefrom during that period was the sum of $4,637.22. The trial court found in his findings of fact that these withdrawals were made for the support, maintenance, pleasure, etc., of the parties, which clearly show that these withdrawals were withdrawals of community funds for community purposes and under the case of Sibley v. Sibley, supra, community funds in a joint bank account are as a matter of law presumed to have been drawn out first before the separate monies are withdrawn. The trial court also specifically found that at no period during the marriage of the parties did the earnings of the Barrington Tire Shop equal or exceed said regular withdrawals therefrom, and also that said withdrawals during the marriage of the parties were $1,140.41 in excess of the earnings of such business during the marriage of the parties. Appellant has not attacked these specific findings of the trial court. The evidence is amply sufficient to sustain such findings—in fact the evidence supporting these specific findings is undisputed in the record.

Unquestionably the real estate and the original tools, appliances, office furniture, and certain other original property of the Barrington Tire Shop owned by Mr. Barrington prior to his marriage and still on hand at the dissolution of the marriage had in no way changed their form and were and still remained the unquestioned separate property of Mr. Barrington.

It is our further view that the other remaining property of the Barrington Tire

Shop, consisting of the new re-tread mold, tire changer, cement spray machine, air compressor and matrice purchased out of the bank account of Barrington Tire Shop during the marriage (which was subject to various indebtedness as shown by the record) and other property on hand in the Tire Shop including the $2,700 worth of stock of new and used tires on hand in Barrington Tire Shop at the dissolution of the marriage, under the undisputed facts in this case, and under the authorities cited in the Farrow and Sibley cases, supra, were in law the separate property of appellee, Elray Barrington.

We have carefully reviewed all of the authorities cited in appellant's excellent brief and find that they are not in point here as such cases deal with fact situations *where proof was not made as to the specific amount of separate property or separate funds in the commingled property.* Here the proof is clear and undisputed as to the nature and extent of the separate property, and based on cogent records, and clear proof was made that the community withdrawals were in excess of the earnings of the Barrington Tire Shop, and the property in question was clearly separate property of appellee. Appellant's first (and only) point is overruled.

■ It is our further view that this cause must also be affirmed for the following reason: The trial court in the light of the evidence undertook to equitably partition the community estate between the parties; appellant has made no complaint and raises no point that the judgment of the trial court in so far as it undertakes to divide and partition the estates of the parties was to any extent unfair or unjust, or that the trial court abused his discretion, in such partition judgment, and therefore appellant presents no question for determination which in law would overturn the judgment of the trial court partitioning the community property of the parties. In this cause no such abuse of discretion is either alleged or shown. This principle of law is well stated in Allen v. Allen, Tex. Civ.App., 28! S W.2d 774, 775, as follows:

"* * * No complaint is made that the judgment of the trial court, in so far as it undertakes to divide the estates of the parties, is to any extent unfair or unjust. There is ample support in the record for the finding as to the amount advanced by appellee. By statute, the court is prohibited from compelling either party to divest himself or herself of the title to real estate. Vernon's Ann.Civ.St., Art. 4638. Subject to that limitation, it has been repeatedly held that the trial court, in granting a divorce, has broad discretion in dividing the property of the parties, and, unless such discretion is abused, such division will not be disturbed on appeal. No abuse of discretion is here shown."

Also in this connection see the recent case of Lesage v. Gateley, Tex.Civ.App., 287 S.W.2d 193, and Sibley v. Sibley, supra.

The judgment of the trial court is affirmed.

Affirmed.