714 P.2d 26

**James Dean GOLDER, Plaintiff-Appellant, Cross-Respondent,**

v.

**Diane R. GOLDER, Defendant-Respondent, Cross-Appellant.**

**Diane R. GOLDER, Plaintiff-Respondent, Cross-Appellant,**

v.

**James Dean GOLDER, Defendant-Appellant, Cross-Respondent.**

**No. 15631.**

Supreme Court of Idaho.

Jan. 20, 1986.

---

Stanley W. Welsh, and Rory R. Jones, of Clemons, Cosho & Humphrey, P.A., and Stephen L. Beer, of Beer & Cain, Boise, for James Golder.

Merlyn W. Clark, and Linda L. Holdeman, of Hawley, Troxell, Ennis & Hawley, Boise, for Diane Golder.

DONALDSON, Chief Justice.

This appeal stems from an independent action by a former wife to reopen a judgment and decree of divorce in order to obtain equitable relief from the property settlement agreement incorporated in the decree. James and Diane Golder were married on September 5, 1970. They subsequently adopted one child, Tara, on April 9, 1975. James Golder is a stockbroker and was elected to the Idaho Legislature in 1976. He continued as a legislator throughout the course of proceedings in the present action. Diane is currently employed as a secretary and was so employed throughout most of the marriage.

During their marriage, the parties owned and managed various rental properties. In 1978 they purchased a chrome plating business which was subsequently sold on June 1, 1979.

The marriage began to deteriorate in 1978 and by early 1979, the Golders decided that divorce was inevitable and began to discuss a division of their community property. On July 5, 1979, Diane signed her interest in eight deeds of trust in communi-

ty real property over to James. On July 6, 1979 the parties entered into a property settlement agreement. The agreement provided that Diane was to receive one-half of the household furniture (stipulated value $2,500), a 1971 Plymouth automobile (stipulated value $800), the funds in their joint checking account ($77 on July 6, 1979), and the funds in her credit union account ($441 on July 6, 1979). In addition, James agreed to give Diane $20,000, payable in $100 monthly installments without interest. The remainder of the community property was declared to be James's sole and separate property. Such remainder was not itemized except to state that it included "certain stocks and bonds and real property which husband has acquired."

The agreement gave Diane custody of Tara, allowing James visitation two nights a week, every other weekend and every other holiday and summer. James agreed to pay Diane $75 per month as child support.

James filed for divorce the same day the agreement was signed. A hearing was held on August 9, 1979. Diane did not appear at the hearing and a default judgment granting the divorce and incorporating the property settlement agreement was entered on that date.

The property settlement agreement was drafted by James's attorney. Diane was not represented by counsel at the property negotiations nor at the time of the granting of the divorce. In the action to reopen the divorce, the parties stipulated that the value of the Golders' community property was $352,675.00 on July 6, 1979, the date the property settlement agreement was signed, and $355,566.00 on August 9, 1979, the date the divorce was granted. The present value of the property Diane received in the divorce settlement was $13,536.04.

On August 8, 1980, Diane initiated an independent action seeking to reopen the judgment and decree of divorce. On September 24, 1980, she filed a motion in the original divorce action seeking to increase the amount of child support and to revise the visitation agreement. On November 7, 1980, James moved for custody of Tara. A hearing was held on the custody motions on December 2, 1980. At that hearing, the parties informally agreed to modify the visitation provisions and to increase the amount of child support.

The two actions were consolidated on May 26, 1981. On September 24, 1982, the parties stipulated to the custody and support of Tara. Diane retained primary custody and the amount of child support was raised to $200 per month. The court ordered the judgment and decree modified in accordance with the stipulations on September 27, 1982.

Trial on the property issues was held on September 19–23, 1983. The district court determined that the property agreement had merged into the divorce decree and therefore that the action was before the court as an equitable independent action to relieve a party from judgment pursuant to I.R.C.P. 60(b). The court found James guilty of fraud and overreaching and ordered equitable redivision of the community property. The court determined that the community property had a value in excess of $355,000.00 at the date of divorce of which Diane had already received $10,875. It therefore awarded her an additional $166,125.00. James appeals from this award. Diane has cross-appealed asserting that the trial court erred in refusing to award her attorney fees and punitive damages.

I.

We begin our analysis by noting that an independent action to relieve a party from a judgment is a most unusual remedy. It is available only rarely, under the most exceptional circumstances. *Compton v. Compton*, 101 Idaho 328, 335, 612 P.2d 1175, 1182 (1980). Such an action will lie only in the presence of extreme fraud. Absent overreaching, the burden is on the claimant to prove each element of fraud by clear and convincing evidence. *Id.* The presence of overreaching, however, "automatically shifts the burden to the party benefited by the unequal agree-

ment to show that the community should not be reapportioned." *Id.* at 336, 612 P.2d at 1183.

In the instant case, the trial court, applying the standards set out in *Compton,* found that James Golder was guilty of both fraud and overreaching in negotiating the property settlement agreement. On appeal, James asserts that these findings are not supported by the record.

The determination of whether the degree of fraud in a particular case rises to the level justifying relief from a judgment requires an assessment of both the relationship between the parties and the actual conduct involved. *Compton, supra* at 335, 612 P.2d at 1182. The courts must strike a balance between competing interests. On one side rests the need for finality of judgments. On the other lies justice—the courts' reluctance to serve as a shield in the perpetration of a fraud.

The marital relationship imposes the high duty of care of a fiduciary on each of the parties. This duty continues until the moment of the marriage's termination.

"This fiduciary duty extends to the parties' negotiations leading to the formation of the property settlement agreement during marriage, and requires, at least, a disclosure by both parties of all information within their knowledge regarding the existence of community property and of pertinent facts necessary to arrive at a reasonable valuation of the property. Like a business partner, each spouse is free to adopt a position favorable to himself or herself regarding the property's valuation, its inclusion in the community, or other such issues. They are not free, however, to resolve such issues unilaterally by concealing the very existence of particular items or amounts of property." *Id.* at 336, 612 P.2d at 1183.

In the instant case, the trial court found that James had concealed the equity values of the parties' property.

"James made false representations to Diane as to the value of community assets and liabilities. His concealment of the substantial equity values of the parties' property to the degree indicated here constituted an extreme degree of fraud. He further represented to her that they were on the verge of bankruptcy; that Wallace Plating was not 'making it' and all their assets were tied to that company so that if it failed they could lose everything; that additional equipment was being required by the E.P.A. which would cause great financial problems; that her fair share of the community was not worth $40,000.00; that he had no money and would be unable to pay more than $100.00 per month for 200 months as a property settlement, and $75.00 per month child support; and furthermore, that she did not need legal representation during the settlement and subsequent divorce.

"All of these representations were material to the division of their community.

"James knew they were false. He had $26,000.00 in a money market fund that he never disclosed to Diane, which should have been included in the division, and which could have been utilized to make his monthly obligations to Diane more equitable. He was fully aware of their approximate financial status; and that the value of their equities was increasing. On June 1, 1977 he gave a financial statement to First Federal Savings and Loan showing assets valued at $179,000.00; and in December, 1977 a financial statement to Idaho First National Bank showing a net worth of $271,260.00; lastly, in loan documents at Idaho First as of September 1, 1978 a net worth of $313,030.00 was shown—current assets of $41,700.00, current liabilities of $19,560.00, working capital of $22,140.00 and real estate equities of $241,300.00.... Clearly he knew they were no where near the verge of bankruptcy, that her 'share' was worth considerably more than $40,000.00, that he was capable of paying more than $175.00 per month to her and their child and that Diane needed financial counseling and legal representation to assist her

throughout the settlement agreement in divorce proceedings."

Diane was without legal representation throughout the course of the property settlement negotiations and divorce. The district court found that James had threatened Diane with custody litigation if she secured legal representation or disputed the property settlement agreement, and concluded that James was guilty of overreaching. This Court noted in *Compton* that "[o]verreaching often appears where one of the parties is not represented by independent counsel." *Id.* at 336, 612 P.2d at 1183.

■ The district court carefully followed the mandate of *Compton* and in a well-reasoned memorandum decision found that Diane had proven both fraud and overreaching under the strict standards set out in that opinion. Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error, in turn, will not be deemed to exist if the findings are supported by substantial and competent, albeit conflicting, evidence. *Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App. 1983). We have carefully reviewed the record in this case and we conclude that it supports the trial court's findings that James Golder was guilty of both fraud and overreaching. Accordingly, we affirm the trial court's decision reopening the judgment and decree of divorce and equitably redividing the parties' community property.

## II.

Diane has cross-appealed asserting that the trial court erred in denying her motions for punitive damages and attorney fees.

■ Punitive damages are not favored in the law and should be awarded only in the most unusual and compelling circumstances. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 904–05, 665 P.2d 661, 668–69 (1983). In the instant case, the trial court concluded that the harsh remedy of punitive damages was inappropriate. An award of punitive damages is within the province of the trier of fact and the trial court is granted wide discretion in determining when such an award is appropriate. *Id.* at 904, 665 P.2d at 668. Absent an abuse of discretion, the trial court's decision will not be disturbed on appeal. We hold that the trial court did not abuse its discretion in denying an award of punitive damages in the present case.

■ Similarly, we hold that the trial court did not abuse its discretion in refusing to award attorney fees. As mentioned above, this case is a consolidation of two separate actions: Case No. 72550 and Case No. 68195. Case No. 72550 was an action in equity for relief from a judgment and was completely independent of the original divorce action. Consequently, the trial court was correct in concluding that the attorney fees provisions contained in Title 32 of the Idaho Code (Domestic Relations) were inapplicable. In order to award attorney fees, the trial court would have had to find that the action was defended frivolously, unreasonably or without foundation. I.R.C.P. 54(e)(1); I.C. § 12–121. The trial judge specifically declined to make such a finding. In view of the fact—noted above—that an action of this sort is an unusual remedy, available only in the most compelling instances, we cannot say that the trial court abused its discretion in declining to make such a finding.

The proceedings in Case No. 68195 involved a motion to modify the divorce decree to increase the amount of child support and to clarify James's visitation rights. All the issues in that action, except Diane's motion for costs and attorney fees, were resolved by stipulation prior to trial. It appears from the record that Diane failed to renew her claim for attorney fees at trial. In any event, the trial court, by omission, declined to award attorney fees in Case No. 68195.

■ I.C. § 32–704 authorizes the trial court to award attorney fees in an action to modify a divorce decree where the financial resources of the parties so dictate. *See Ross v. Ross*, 103 Idaho 406, 409–10, 648 P.2d 1119, 1121–22 (1982). Such an award

is not appropriate where a party has the financial resources necessary to prosecute or defend the action. *Id.* at 410, 648 P.2d at 1121. In the instant case, Diane was awarded an additional $166,000 as her share of the parties' community property. In light of this award, it cannot be said that Diane was without sufficient funds to pay her attorney fees. We therefore hold that the trial court did not abuse its discretion in failing to award attorney fees in Case No. 68195.

■ Although we do not find the trial court abused its discretion in declining to award attorney fees below, we are not constrained thereby in the exercise of our own independent discretion in deciding whether to award attorney fees on appeal. An award of attorney fees on appeal is appropriate "when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979); I.R.C.P. 54(e)(1).

The basic philosophy underlying Idaho's statutory divorce scheme is that the community estate will be divided equally between the parties absent compelling reasons for an unequal division. I.C. § 32–712(1)(a). In the instant case, the property settlement agreement, paralleling this philosophy, recited that it was intended to be as equal a division as possible under the circumstances, and that it provided for a fair and equitable division of the community estate. Relying on these recitations, the magistrate ratified the agreement and incorporated it into the divorce decree. However, in spite of its assertions to the contrary, the division set forth in the agreement was manifestly unequal. James received more than $300,000 in community assets while Diane received less than $14,000. The district court found that the unequal division was procured through James's fraud and overreaching and redivided the property in an effort to achieve substantial equality. Diane was ultimately awarded only that amount to which she was lawfully entitled

to from the very beginning of these proceedings. For James to pursue an appeal under such circumstances was, in our view, totally unreasonable. We therefore hold that Diane is entitled to attorney fees on appeal.

The judgment of the district court is affirmed.

Costs and attorney fees to respondent.

McFADDEN and WALTERS, JJ. Pro Tem., concur.

BISTLINE, Justice, concurring in part, dissenting in part.

I concur in all of the majority's opinion except its holding that the district court did not abuse its discretion in refusing to award punitive damages. If ever there were a case justifying imposition of such damages, and if ever there were a case where the district court abused its discretion in not awarding them, this is it. The test for justifying an award of punitive damages was established in *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983), wherein this Court stated:

An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences...." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be terms "malice, oppression, fraud or gross negligence." (Citations omitted.)

Here we have Mr. Golder defrauding his wife out of $166,000 through acts of deceit, threats, and grand-scale bullying. It is inconceivable to view Mr. Golder's acts as being anything but unreasonable; they extremely deviate from any "reasonable standards of conduct." *Id.* Only an individual possessing "an extremely harmful state of mind," *id.*, could have committed the acts of fraud Mr. Golder committed in this case.

Mr. Golder deserves to be punished—one of the purposes of punitive damages. As this Court has stated, "the public purpose behind punitive damages is both to punish and to deter." *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Ins. Co.,* 95 Idaho 501, 504, 511 P.2d 783, 786 (1973); *see also Shields v. Martin,* 109 Idaho 132, 706 P.2d 21, 27 (1985) ("Punitive damages are not awarded for purposes of compensating the plaintiff, but to punish the defendant and deter others from following defendant's example.")

As this Court stated in *Boise Dodge, Inc. v. Clark,* 92 Idaho 902, 909, 453 P.2d 551, 558 (1969): "Exemplary damages are more likely to serve their desired purpose of deterring similar conduct in a *fraud* case ... than in any other area of tort." *Quoting Walker v. Shelton,* 10 N.Y.2d 401, 223 N.Y.S.2d 488, 492, 179 N.E.2d 497, 499 (1961), cited with approval in *Cheney, supra,* 104 Idaho at 905, 665 P.2d at 669.

The facts in this case speak for themselves. Punitive damages should have been imposed. I would therefore affirm, but remand to the district court for a hearing on the amount of deterence which might reasonably be expected to deter such future conduct.

HUNTLEY, J., concurs.