772 P.2d 1236

**Ella JOSEPHSON, Plaintiff–Appellant,**

v.

**Lynn  JOSEPHSON,
Defendant–Respondent.**

No.  17001.

Court  of  Appeals  of  Idaho.

April  25,  1989.

Stanley W. Welsh of Clemons, Cosho & Humphrey, Boise, for plaintiff-appellant.

John K. Gatchel, Payette, for defendant-respondent.

## SUBSTITUTE OPINION

The Court's prior opinion, dated October 17, 1988, is hereby withdrawn.

SWANSTROM, Judge.

This appeal concerns the classification, valuation and distribution of property in a decree of divorce between Ella and Lynn Josephson. Ella Josephson has appealed from the district court's decision which affirmed the magistrate's findings and conclusions. The issues are: whether a savings account owned by Lynn retained its character as separate property; whether the community is entitled to reimbursement for improvements made to Lynn's separate property; whether the common stock of two closely held corporations was correctly classified, valued and divided; whether the community has any right to the retained earnings of one of the closely held corporations; and whether the parties' attorney fees are community debts. We affirm in part, vacate in part and remand the case with directions.

On April 27, 1964, Ella and Lynn Josephson married. Twenty-one years later, they stipulated that each be granted a decree of divorce from the other on the ground of irreconcilable differences. The decree of divorce was filed on September 24, 1985. A trial was later held before the magistrate for the purposes of classifying and dividing the parties' property. The magistrate's findings regarding the parties' property are summarized in parts of this opinion according to their related issues.

■ We begin our discussion of the issues by setting forth the standard of review. On appeal from a decision of the district court reviewing a magistrate's findings and conclusions, we will treat the district court as an intermediate appellate court and we will independently review the magistrate's findings. *Matter of the Es-*

*tate of Bradley,* 107 Idaho 860, 693 P.2d 1062 (Ct.App.1984). Further applicable standards of review depend on whether the issue presented is one of law, fact or discretion.

The classification of property in a divorce proceeding involves questions of law and fact. We review the trial record to determine whether there is substantial and competent evidence to support the findings of fact, and whether the magistrate correctly applied the law to the facts as found. *See Gardner v. Gardner,* 107 Idaho 660, 691 P.2d 1275 (Ct.App.1984). The division of community property is a question of discretion, guided by statutory and case law. *Donndelinger v. Donndelinger,* 107 Idaho 431, 690 P.2d 366 (Ct.App.1984).

■ A preliminary question to be resolved is whether the magistrate was required to cite legal authority and articulate the legal basis for his findings and conclusions. Ella insists that the magistrate was under such duty and that his failure to fulfill it resulted in a faulty decision. We disagree. A trial judge's general duty is to make findings of fact and reach conclusions of law from those facts. I.R.C.P. 52(a). Furthermore, where a trial judge is required to exercise his discretion, he should set forth the reasons for the result achieved in his decision. *See Donndelinger v. Donndelinger, supra.* Of course, a trial judge may cite authority and identify legal rules and principles for his conclusions or reasons, but there is no requirement that he must do so. Nor is there any law which states that a failure to cite authority renders faulty a trial judge's decision. We strongly encourage trial judges to articulate the legal basis of their decisions. When the basis of a decision is unclear, and appellate review is thereby hindered, the appellate court may be prompted to remand the case for clarification. However, we believe such a step is unnecessary in this case.

### Savings Account

Lynn owned a savings account that as of November 19, 1984, had a balance of

$2,423. It is agreed that this savings account was started with Lynn's separate property. Evidence at trial showed that from November 1984 to December 1985 some community funds had been deposited in the account and some community debts were paid out of the account. At the time of divorce on September 24, 1985, the account had a balance of $11,400. At the time of trial for property division, January 2, 1986, the account had a balance of $2,290. Ella contends the commingling of separate and community funds in Lynn's savings account rendered tracing of the separate funds impossible, thus, the funds in the account are community property. Moreover, Ella argues that she is entitled to one-half of the balance in the account as of the date of the divorce. The magistrate concluded that because the $2,290 balance in the account at the time of trial was less than the beginning balance, the funds in the account remained the separate property of Lynn. The magistrate gave no explanation why he focused on the trial date rather than the date of divorce in determining the value and nature of the account. The district court held that the magistrate's findings were supported by substantial, competent evidence. We disagree.

■ Where the parties have commingled their separate and community funds in a bank account, and treat them as one fund, it all becomes community property. *Gapsch v. Gapsch,* 76 Idaho 44, 277 P.2d 278 (1954). The commingling doctrine is a special application of the general presumption that all property acquired during the marriage is community property. *Houska v. Houska,* 95 Idaho 568, 512 P.2d 1317 (1973). The party who asserts that the property is separate has the burden of persuasion, and must prove the property is separate with reasonable certainty and particularity. *Id.* This may be accomplished through evidence of tracing or accounting. *See Evans v. Evans,* 92 Idaho 911, 453 P.2d 560 (1969).

■ The evidence produced at trial showed a commingling of separate and community funds in Lynn's savings account. The evidence does not disclose the nature or purpose of all of the deposits or withdrawals, i.e., whether they were separate or community. The evidence shows some community funds, including bonuses paid to Lynn, were deposited into the account and funds were withdrawn to pay community debts such as taxes and living expenses. The evidence also shows that some funds were withdrawn for expenditure on the parties' principal residence, which residence, as we note later in this opinion, was Lynn's separate property. There was no evidence showing that the separate and community funds in the account were treated as distinct and apart. To the contrary, the funds in the account appear to have been regarded by Lynn as one. The burden of persuasion was on Lynn to prove that his separate funds were identifiable and traceable.

In cases involving allegedly commingled property, the courts have recognized an accounting method which treats expenditures for community purposes as having been made from community funds and expenditures for separate purposes as having been made from separate funds. *E.g., Mix v. Mix,* 14 Cal.3d 604, 122 Cal.Rptr. 79, 536 P.2d 479 (1975); *Barrington v. Barrington,* 290 S.W.2d 297 (Tex.Civ.App.1956). *See also Houska v. Houska, supra,* and *Evans v. Evans, supra* (both cases recognizing that if community expenditures during the marriage equal or exceed community income, any additional purchases or acquisitions necessarily are separate property).

When utilizing this accounting method, a court compares the aggregate community deposits and withdrawals for community expenditures. If the expenditures exceed the deposits, there is no community interest in the residual funds. If the deposits exceed the expenditures, the net amount reflects a community interest in any residual funds. In the event separate property is used for community expenditure, reimbursement may be sought from the com-

munity, unless a gift to the community was intended. Here, Lynn has made no contention that he is entitled to any reimbursement from the community because separate funds were taken from the account to pay community debts.

We remand the case for more particularized findings as to the purpose of the withdrawals and for a further determination as to whether the aggregate community withdrawals equalled or exceeded the community deposits. If the magistrate finds that they did, the residual balance in the account may again be characterized as separate property. If not, the balance may be comprised of some community and some separate funds. A division can be made accordingly. But if the evidence is inadequate to make such a determination, then the magistrate should hold that Lynn has not carried his ultimate burden of proving the existence of separate property and should conclude that the balance of the account is community property due to commingling.

The character of community or separate property ordinarily should be determined at the time of divorce. Here, we note that the magistrate considered evidence of bank account transactions during a period extending beyond the divorce. However, in this case, if post-divorce expenditures from the account were made by Lynn entirely for the purpose of paying outstanding community debts, then he would be entitled to credit for those payments in the final property division. Thus, the "bottom line" would be the same as if the accounting period were extended beyond the divorce to the time of trial on property division issues.

### Separate Property Residence

At the time the parties were married, Lynn owned a home in Payette, Idaho. This home became Lynn's and Ella's permanent residence. During the marriage several improvements were made to the home. Lynn's basis in the home was approximately $114,000. The home had an appraised value, after improvements, of $103,000. Ella does not dispute the separate property character of Lynn's home in Payette. Ella contends, however, that community efforts enhanced the value of the home. The magistrate found the improvements made by the community did not enhance the home's value.

When community labor or funds enhance the value of separate property, the amount of the enhancement is community property for which the community is entitled to reimbursement. *Martsch v. Martsch*, 103 Idaho 142, 645 P.2d 882 (1982). The measure of reimbursement is the increase in value of the property attributable to the community contribution, not the amount of the community contribution itself. *Id.* The party seeking reimbursement has the burden of proving that the community expenditures have enhanced the value of the separate property. *Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976).

After their marriage, Lynn and Ella remodeled the interior of the home, constructed a patio and landscaped the area around the home. The cost of the improvements was below $20,000. Ella testified that in her opinion the improvements enhanced the value of the home by $50,000. Other than her opinion, Ella produced no evidence demonstrating that the improvements increased the value of the home. The magistrate was at liberty to give little weight to Ella's opinion testimony. The magistrate could have chosen to rely instead upon the appraisal presented by Lynn which showed that the improvements did not enhance the value of the home. This, in fact, is what the magistrate did. He found that Ella simply had not met her burden of proof on this issue. The magistrate's finding is not clearly erroneous. Accordingly, we uphold his conclusion that the community was not entitled to reimbursement for the improvements made.

### Closely Held Corporations

Beginning in 1944 and 1949 Lynn owned and operated, as sole proprietorships, two

produce packing businesses—one in Payette, Idaho, and one in Nyssa, Oregon. In 1967, three years after the marriage, the businesses were incorporated; the business in Payette was incorporated as Lynn Josephson Produce, Inc. (LJPI), and the business in Nyssa was incorporated as Josephson Produce, Inc. (JPI). At the time of incorporation LJPI issued to Lynn as his separate property 3,384 shares of common stock and debenture bonds in the amount of $200,000. Lynn and Ella received as community property 2,336 shares of common stock. This allocation of stock and debenture bonds was intended to reflect Lynn's separate property interest in the business as well as the community interest generated during the three years of the marriage.

Similarly, upon incorporation JPI issued to Lynn as his separate property debenture bonds in the amount of $65,200. Lynn and Ella received as community property 3,318 shares of common stock and debenture bonds in the amount of $51,800. In 1974 JPI was liquidated and its assets were merged into LJPI. In exchange for shares of JPI common stock, Lynn and Ella received 811 shares of LJPI common stock. The debenture bonds of JPI were traded straight across for new LJPI bonds, having the same separate or community property characteristics as the replaced JPI bonds.

In 1970 a new corporation called Josephson Agro, Inc. (Agro) was formed. Twenty-one shares of Agro stock were issued to Lynn, and as agreed by the parties, these were community property. This corporation serves as a marketing and brokerage service for LJPI.

The magistrate evenly divided the twenty-one shares of Agro between Lynn and Ella. Other outstanding shares are owned by a third party or parties. No value was placed on the Agro shares by the magistrate. The magistrate also evenly divided the 3,147 community property shares of common stock in LJPI and evenly divided the $51,800 community property debenture bonds. No value was placed on the LJPI stock. Lynn was awarded those shares and debenture bonds of LJPI which had been issued to him as his separate property.

Ella's complaint regarding the closely held corporations is three-fold. First, she asserts that all the common stock of LJPI must be classified as community property. Second, Ella submits that if Lynn owns common stock in LJPI as his separate property, then the community has an interest in LJPI's retained earnings because of Lynn's inadequate salary and the community must be reimbursed for any inadequacy. Third, Ella maintains that the magistrate erred by distributing stock to her instead of placing a value on the community stock and making a monetary award to her for her share. She insists the present distribution of stock has left her with a valueless minority interest in LJPI and has failed to provide for complete separation of the parties and their property. We address each point in turn.

### A

Ella rests her claim that all the common stock of LJPI is community property upon the presumption that all property acquired during the marriage is community property. She suggests that the incorporation of Lynn's sole proprietorships involved a commingling of assets. She contends that Lynn has not traced with clear and satisfactory evidence his separate property interests from the proprietorships to the corporations. We find no merit in Ella's position.

Under I.C. § 32–903, all property of either the husband or the wife owned by him or her before marriage shall remain his or her sole and separate property. There is no dispute that the sole proprietorships owned by Lynn at the time of marriage were his sole and separate property. After marriage, however, the net income of the proprietorships became community property. I.C. § 32–906; *see Martsch v. Martsch, supra.* Nonetheless, the assets of the proprietorships remained the sole and separate

property of Lynn. The presumption that all assets acquired during the marriage are community property applies only where it is impossible to trace the source of the funds acquiring the assets. *Stahl v. Stahl*, 91 Idaho 794, 430 P.2d 685 (1967). So long as the separate property of either spouse is identifiable and traceable, commingling such property with community property does not convert it into community property. *Id.*

■ When the proprietorships were incorporated, Lynn received stock and debenture bonds in a value commensurate with his separate property interest in the sole proprietorships. Lynn and Ella received common stock and debenture bonds to reflect the community interest in the proprietorships. Lynn's separate property assets in the proprietorships are identifiable and easily traceable. Competent and substantial evidence supports the magistrate's classification of the common stock in LJPI. Therefore, we uphold the magistrate's conclusion that Lynn owned stock in LJPI as his sole and separate property.

### B

We now determine whether the community has an interest in the retained earnings of LJPI. Lynn's position as majority shareholder and officer of the closely held corporation gave him substantial influence over the decision to retain net earnings or to distribute them in the form of dividends. Undisputed evidence showed that no dividends had ever been declared and distributed. Such dividends would have been community property. Lynn's salary would also have been community property, and both the dividends and the salary would have had a direct impact on retained earnings. Thus, a proper inquiry is whether community efforts—Lynn's services, which benefitted the corporation—were adequately re-

warded through salary. *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1973).

■ In determining whether the community has been adequately compensated a trial court should consider the following: the nature and size of the business, the nature and extent of community involvement in the conduct of the business, and the growth pattern of the business. *Speer v. Quinlan, supra.* Further, the trial court should determine whether the corporation's net earnings have been retained for a reasonable business purpose or to defraud the community. In this connection, the trial court may consider the history, if any, of cash or stock dividend distributions. *Id.*

■ At trial Ella attempted to show, through the testimony of an accountant who gave his opinion as an expert, that Lynn's salary was inadequate. This testimony was contradicted by Lynn's own expert who gave his opinion that Lynn's salary was adequate. The magistrate found the community had received $20,000 in interest income from the debenture bonds. Although dividends were not distributed, the magistrate found the corporation would pay Lynn a bonus in profitable years. The magistrate also found that Ella's witness had based his opinion on insufficient factual data. Finally, the magistrate found Lynn's services were adequately compensated; consequently, the community had no interest in LJPI's retained earnings. Substantial and competent evidence supports the magistrate's findings.

There was no evidence that the corporation retained its earnings to defraud the community. The evidence did show that the corporation had provided the parties with cars and assorted recreational equipment. Based on our review of the record, we uphold the magistrate's conclusion on this issue.[1]

---

**1.** At trial, experts hired by both the parties testified that the retained earnings were a factor affecting the valuation of the corporations and, hence, the valuations of the community-owned shares. It follows that if the community had less spendable income over the years of the marriage because of the lack of any dividends, Ella arguably would gain back some of the

## C

The decision to divide and distribute the community stock to the parties, as with all property distribution questions, is a matter of trial court discretion. As noted, the exercise of that discretion is guided by statutory and case law. The magistrate determined it was unnecessary to find a value for the stock because he was dividing it equally between the parties. Ella insists the magistrate erred both in not finding a value for the stock and in distributing stock to her instead of a lump-sum monetary award.

■ The division of property upon a decree of divorce is guided by the principle that it must be assigned as deemed just, with a substantially equal division in value unless there exist "compelling" reasons to order an unequal division. I.C. § 32–712(1). In making its decision the trial court must consider all the facts in the case, including the conditions of the parties and the needs of each spouse. *Id.* Here, the magistrate acted within his discretion by apparently deciding to make an equal division in value. However, he sought to accomplish this by equally dividing the shares of stock themselves. As we now explain, this did not produce an equal division of value.

■ Where the community's stock is publicly traded, a substantially equal division of such stock may satisfy the requirements of I.C. § 32–712. However, where, as here, the community owns stock in a closely held corporation, with majority control in one spouse and with virtually no public market for the stock, the simple division of the stock does little to completely separate the parties and their property. We hold that I.C. § 32–712 contemplates a complete division of community property, leaving the parties free of tangled interests.

Here, Lynn has spent a lifetime building up a produce packing business. His need to retain ownership and control over his business is self-evident. On the other hand, Ella has no desire to continue in the ownership or control of the business. As it now stands, Ella is a minority shareholder in LJPI, a corporation which provides no dividends and offers no opportunity for her control, essentially rendering her stock valueless until the corporation is dissolved and its assets liquidated. Ella's position with respect to her Agro shares is no better. There is no ready market for the stock of either corporation. Ella has a need for income-producing assets, which for her, the shares of stock do not represent.

In *Simplot v. Simplot,* 96 Idaho 239, 245, 526 P.2d 844, 850 (1974), the following statement appears.

In a division of community property such as stock in a corporation, where the shares are not divided between the parties, but are valued by the trial court and then properties of relatively equal value are distributed to each of the parties, it is essential that the trial court make an accurate determination of the market values of the properties prior to making an award.

Lynn takes the converse of this language and applies it to this case, arguing that the trial court is *not* required to determine the value of the stock if the trial court divides the shares equally between the spouses. The district court here apparently was of the same view as it quoted the above language in its appellate memorandum decision.

The quoted language was dicta to the actual holding in *Simplot,* where the Supreme Court remanded the case to the trial court to determine the market value of the stock in question. Moreover, this language suggests no rule that should be applied to the facts of the present case. Here, unlike the situation in *Simplot,* the spouses do not end up with an equal number of shares of stock in the corporations. By reason of

"lost" benefits because of the greater value of her interest in the community-owned shares at

the time of the divorce.

Lynn's ownership of a large number of shares of LJPI as his separate property, in addition to his half of the community's shares, Lynn has a dominant, majority interest in the corporation. As we have noted, Ella is placed in a disadvantaged position in respect to the value of her minority shares in corporations which will continue to be operated and controlled by her former husband.

Under these facts, the conditions of the parties and the needs of each spouse have not been adequately considered. Therefore, the magistrate's decision with regard to the division and distribution of the community shares of stock in LJPI and Agro must be vacated. We remand with the following directions.

First, the shares of common stock held as community property are material assets of the community and it is essential that the trial court find their value. *See Donndelinger v. Donndelinger, supra.* The shares are to be valued as of the date of divorce. As explained in *Simplot v. Simplot, supra,* the value of corporate stocks should be measured by market value, not book value, although it is possible for the two values to be the same. While there is no "market" for the stocks held here, they are capable of being valued for the purpose of property division. The present record in this case contains substantial, albeit conflicting, evidence upon which a value of the stocks in each corporation may be found. We leave that decision to the trial court.

We recognize that the trial judge who heard such evidence is no longer a judge. It is not our intent, therefore, to preclude the trial court on remand from taking additional evidence as to values, if the court so desires or deems it necessary. However, we offer the following guidance on remand.

There was some discussion at the trial with respect to whether Ella's stock should be discounted because of its "minority" interest. We find such discounting will not be applicable here when the magistrate awards all shares to Lynn and orders compensation or an offsetting award of other property to Ella. *See Eyler v. Eyler,* 492 N.E.2d 1071 (Ind.1986) (vacating *Eyler v. Eyler,* 485 N.E.2d 657 (Ind.App.1985)).

In a petition for rehearing, Ella has urged us to direct the trial court to determine the values of the corporations' stock as of the date of the hearing on remand. She argues that if the value of the stock has significantly risen since the date of divorce, Lynn would benefit from such increase but she would not. The value of the stock may have changed, either upward or downward, since the date of the divorce. With nothing in the record before us, we are not prepared to say that Lynn should or should not benefit from either a drop or a gain in the value. We are not persuaded by Ella's speculative argument to depart from the general rule for valuing and dividing community property as of the date the community is terminated.

However, we think it would be appropriate for the trial court on remand to allow the parties to submit evidence of the corporate financial operations since the date of divorce to assure that, overall, a substantially equal division in value of the community property has been made. If, for example, Ella has been deprived of substantial earnings from her stock since the date of the divorce while Lynn has accumulated benefits not shared and not reasonably earned through his services and skills as manager, then Ella may be entitled to a compensating award.

As noted earlier, the trial judge divided the community-owned shares equally, apparently intending to achieve a substantially equal, overall division in value of the community property. While we agree with this goal, we conclude that it was not accomplished here.

Ella should not be given stock but should receive a monetary amount or an award of other property representing the value of her distributable shares. We recognize that an immediately payable lump-sum award to Ella would be economically disastrous for Lynn and the corporations, unless

a loan could be obtained to pay the monetary amount. With a little imagination a workable solution can be formulated. For example, the trial court could order an installment program be established for paying Ella the value of her interest in the shares of stock. Ella may obtain an equitable lien on Lynn's assets for security of payment. In the event Ella receives a judgment for a monetary amount equivalent to the value of her shares, she should be entitled to interest on any deferred payments at the judgment rate specified in I.C. § 28–22–104(2). Such interest would run from the date of the judgment, not from the date of divorce. Although the date of the divorce decree is a benchmark for determining the value of property for equitable division, interest would only accrue on a money judgment setting forth the obligation to pay. *See Lawson v. Lawson,* 87 Idaho 444, 394 P.2d 1008 (1964); *Krebs v. Krebs,* 114 Idaho 571, 759 P.2d 77 (Ct. App.1988). Moreover, the installment period must be a reasonable length of time. *Larson v. Larson,* 95 Idaho 376, 509 P.2d 1297 (1973). The matter is left to the trial court's discretion, guided by the above principles.

### *Attorney Fees*

The final issue presented in this appeal is whether the parties' attorney fees incurred prior to the decree of divorce are community debts which must be satisfied out of community property prior to division and distribution. The magistrate did not directly discuss this issue, but concluded that each party had sufficient assets to bear his or her own fees. This result was affirmed on appeal to the district court. Ella contends the lower courts missed the point of her argument. She requests this Court to give some guidance on this issue. We will attempt to do so.

We believe it elementary that attorney fees incurred by either spouse *prior to the decree of divorce* are presumed to be community debts. *See, e.g., Murphey v. Murphey,* 103 Idaho 720, 653 P.2d 441 (1982); *Mifflin v. Mifflin,* 97 Idaho 895, 556 P.2d 854 (1976). Thus, the trial court is not faced with a discretionary choice on whether to classify attorney fees incurred prior to the decree of divorce as community debts; rather, the trial court will factually determine whether any fees have been incurred and the amount. Such fees must be satisfied out of the community property prior to equitable division and distribution of the property. The overall allocation of attorney fees, like other community debts, is left to the discretion and general equitable power of the trial court, subject to the requirement of a substantially equal division unless circumstances require an unequal division.

Under I.C. § 32–704, the trial court may award attorney fees and costs to one spouse prior to the decree of divorce. Such awards would ordinarily be made where one spouse has control over a substantial amount of community assets and the other spouse has a financial need for an award from those assets to "maintain or defend" a divorce proceeding. These awards, of course, would be treated as community debts and considered in the overall distribution scheme.

The trial court may, pursuant to I.C. § 32–704, make awards of costs and attorney fees in post-divorce decree proceedings. The financial resources of the parties must first be considered. *See Golder v. Golder,* 110 Idaho 57, 714 P.2d 26 (1986). Then the factors under I.C. § 32–705 must be considered and applied. *See Swope v. Swope,* 112 Idaho 974, 739 P.2d 273 (1987). Because there is no "community" in post-divorce decree proceedings, community property is not liable for these awards.

Therefore, we hold that the magistrate erred in not classifying as community debts the attorney fees and costs incurred by the parties prior to the decree of divorce. We remand this question to the magistrate for a factual finding on the amount of attorney fees classifiable as community debts. The magistrate must satisfy the debts out of the community property before an eq-

uitable division and distribution of the property.

The district court's decision, affirming the magistrate's findings and conclusions, is affirmed in part and vacated in part. The case is remanded for further proceedings. Each party has prevailed in part on appeal and each party will bear his or her own costs. No attorney fees on appeal.

WALTERS, C.J., concurs.

BURNETT, Judge, specially concurring.

I join the Court's opinion on each of the substantive issues discussed. However, I write separately to comment on the procedural question of whether trial judges should articulate the legal rules or principles upon which their decisions are based.

The Court correctly notes that I.R.C.P. 52(a) does not impose such a requirement. It directs judges only to make findings of fact and to state conclusions of law. In reality, however, judicial decision-making is a three-step process: (1) finding the facts, (2) identifying pertinent legal rules or principles, and (3) drawing conclusions by application of those rules or principles to the facts found. Rule 52(a) is silent regarding the critical middle step.

The correctness of a conclusion of law depends upon the validity of the rule or principle employed. If a rule or principle is not identified, the decision-making process lacks a legal foundation. Moreover, if a rule or principle is identified in the judge's mind but not articulated in his decision, the legal foundation of the decision is obscure. When such a decision is appealed, the reviewing court must undertake the awkward task of inferring the judge's analysis from the conclusions stated and then determining whether the inferred analysis is correct.

This appellate double-clutching can be avoided, and the legal reasoning of trial court decisions can be sharpened, if judges articulate the rules or principles employed in reaching conclusions of law. Many of our best trial judges already perform this function, either in the conclusions of law themselves or in memorandum decisions. The time has come to require, not merely to encourage, this salutary practice. I respectfully urge our Supreme Court's civil rules committee to give the matter careful consideration.