**Petition Conditionally Granted and Opinion filed February 16, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00274-CV

---

### IN RE DONOVAN MITTELSTED, Relator

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**On Appeal from the County Court at Law No. 3**
**Brazoria County, Texas**
**Trial Court Cause No. PR39333**

---

### O P I N I O N

Relator Donovan Mittelsted filed a petition for writ of mandamus challenging the trial court's order finding him in contempt for violating an injunction provision in a final judgment. We stayed enforcement of the contempt order pending our disposition of the petition. For the reasons explained below, we hold that the contempt order is void. Accordingly, we conditionally grant the petition and lift our July 1, 2022 stay order.

**Background**

This original proceeding arises from a will contest. The testator, Jack McClure, died on February 22, 2019. The trial court admitted to probate a February 12, 2019 will executed by Jack. The will named relator Donovan Mittelsted, Jack's half-brother, the sole beneficiary and appointed Donovan independent executor. Shortly before he died, Jack also changed the pay-on-death beneficiary designations on several financial accounts to designate Donovan as beneficiary.

Jack's sisters, Denise McClure Meriwether and Darla McClure Sands, contested the will and beneficiary designation changes. They requested that Donovan be removed as independent executor. At trial, a jury found among other things that: Jack lacked testamentary capacity to sign the will; Jack signed the will as a result of undue influence by Donovan; Jack lacked contractual capacity to change the relevant beneficiary designations; and Jack signed each beneficiary designation change form as a result of undue influence or mistake of fact.

The court signed a final judgment consistent with the jury verdict on September 10, 2021. In relevant part, the judgment (1) vacated the order admitting the will to probate, (2) vacated Donovan's appointment as executor, (3) declared void the beneficiary designation change forms, (4) ordered Donovan to "turnover and deliver" to a successor administrator all estate assets in his possession or control, and (5) enjoined Donovan from conveying or expending any estate assets subject to the trial court's jurisdiction. The judgment included the following language:

> Donovan Mittelsted is required to turnover and deliver to the Successor Personal Representative, as may be appointed by subsequent order, all assets (whether real or personal) in Donovan Mittelsted's possession and/or control, and belonging to the Estate of Jack McClure, deceased. **Except to convey to the Successor Personal Representative, Donovan Mittelsted is enjoined from conveying or expending any assets (whether real or personal) belonging to the Estate of Jack**

2

**McClure as of Jack McClure's death and otherwise subject to this Court's jurisdiction. Breach of this injunction warrants sanctions and/or a finding of contempt.** (Emphasis added).

About two weeks later, on September 27, 2021, the court signed an amended final judgment containing injunctive language identical to the bolded text quoted above.[1]

In February 2022, real parties in interest Denise and Darla filed a motion for contempt against Donovan. They alleged that Donovan had improperly conveyed or expended estate assets in violation of the September 10, 2021 and September 27, 2021 injunctions. They identified three bank accounts from which they contended Donovan withdrew or expended estate funds: (1) a TD Ameritrade brokerage account (account number ending in -456) ("Brokerage Account"); (2) a TD Ameritrade IRA account (account number ending in -210) ("IRA Account"); and (3) a HomeTown Bank personal checking account (account number ending in -747) ("Checking Account"). Denise and Darla contended generally that Donovan had commingled his personal funds with estate funds in these three accounts and then spent money from the accounts for personal expenses while the injunctions were in effect.

Following an evidentiary hearing, the trial court signed an order granting the motion for contempt and finding that Donovan committed twenty-two separate acts of contempt. The court's order stated:

> Plaintiffs and Mr. Mittelsted appeared before this Court for a hearing on the Motion. After considering the Motion, any response(s) or replies, evidence and arguments presented at the hearing, the Court finds that Mr. Mittelsted has disobeyed this Court's injunctions as follows:

---

[1] Donovan appealed the amended final judgment, which we affirm today by a separate opinion and judgment in cause number 14-21-00755-CV.

3

1. Violating the Court's injunction in the *Final Judgment* dated September 10, 2021, which prohibited Donovan Mittelsted from conveying or expending any assets belonging to the Estate of Jack McClure as of Jack McClure's death or otherwise subject to this Court's jurisdiction, by:

   a. Withdrawing $8,500 out of TD America account ending -456 on September 15, 2021; and

   b. Paying $8,976.54 out of HomeTown -747 to JM Bullion, Inc. on September 16, 2021.

2. Violating the Court's injunction in the *Amended Final Judgment* dated September 27, 2021, which prohibited Donovan Mittelsted from conveying or expending any assets belonging to the Estate of Jack McClure as of Jack McClure's death or otherwise subject to this Court's jurisdiction, by:

   a. Transferring $250,000 out of TD Ameritrade account ending -456 on September 28, 2021 to Donovan Mittelsted's Hometown account -2474[2];

   b. Withdrawing $35,000 out of TD Ameritrade account ending -456 on October 13, 2021 to Donovan Mittelsted's Bay Area Credit Union -7306;

   c. Wire transferring $50,000 out of TD Ameritrade account ending -456 on November 12, 2021 to Esther Anderson PC IOLTA account;

   d. Withdrawing $9,000 out of IRA TD Ameritrade account ending in -210 on October 1, 2021 to Donovan Mittelsted's Bay Area Credit Union -7306;

   e. Withdrawing $9,000 out of IRA TD Ameritrade ending -210 on October 6, 2021 to Donovan Mittelsted's Bay Area Credit Union -7306;

---

2 This appears to be a transpositional error. There is no account -2474, and the evidence shows that Donovan transferred $250,000 from the Brokerage Account to the Checking Account (account number -2747).

f. Paying $1,018.62 out of HomeTown -747 to Nelnet Loan Service on September 27, 2021;

g. Paying 2,600.00 out of HomeTown -747 to Susan Ramirez on September 27, 2021;

h. Paying $1,621.64 out of HomeTown -747 to APMEX on October 6, 2021;

i. Withdrawing $4,700 out of HomeTown -747 on September 29, 2021;

j. Paying $1,621.64 out of HomeTown -747 to APMEX on October 6, 2021;

k. Paying $28,879.26 out of HomeTown -747 to Lone Star RV Sales on October 15, 2021;

l. Paying $12,707.70 out of HomeTown -747 to Money Metals Exchange on October 18, 2021;

m. Withdrawing $6,000 out of HomeTown -747 on October 20, 2021;

n. Paying $5,000 out of HomeTown -747 to John E. Smith & Associates on October 25, 2021;

o. Paying $1,018.62 out of HomeTown -747 to Nelnet Loan Service on October 27, 2021;

p. Paying $5,000 out of HomeTown -747 to Esther Anderson on October 27, 2021;

q. Paying $11,591.58 out of HomeTown -747 to Cassie Pope on November 1, 2021;

r. Paying $26,142.16 out of HomeTown -747 to Brian Kennemer on November 2, 2021;

s. Paying $985.74 out of HomeTown -747 to Esther Anderson on November 12, 2021; and

5

t.  Paying $1,926.25 out of HomeTown -747 to Esther Anderson on November 12, 2021.

Accordingly, the Court finds that Mr. Mittelsted should be and is herein held in contempt of court.

As a penalty for the twenty-two acts of contempt, the court imposed a single coercive civil contempt sentence requiring that Donovan be confined for thirty days in the Brazoria County jail, but the court suspended the sentence and ordered that Donovan could purge himself of contempt by paying $287,457—representing "the funds listed above that have been transferred, conveyed, and/or expended"—into the court registry within thirty days.  If the full amount was not paid by the deadline, then capias would issue.

Donovan petitioned this court for mandamus relief.  We stayed enforcement of the contempt order pending our review.

### Issues Presented

Donovan raises five issues.  First, he says the contempt order is void because it exceeds the maximum permissible fine.  Second, he complains that the part of the order finding that Donovan violated the September 10, 2021 injunction is void because that injunction was superseded by the September 27, 2021 injunction in the amended final judgment.  In part of his second issue, Donovan adds that the entire order is void because it affixes one penalty for multiple acts of contempt but at least one of those acts is unsupported by evidence.  In his third issue, he argues that the trial court abused its discretion by finding him in contempt.  The gist of Donovan's third issue is that, although he admits he commingled a certain amount of estate funds with his personal funds, there is no evidence that he spent any commingled funds after trial.  Fourth, he contends the trial court abused its discretion in finding twenty-two separate acts of contempt.  In this issue, he raises no-evidence challenges

6

to certain specific findings. Fifth, Donovan argues that he cannot be required to deposit additional funds into the registry because he has already superseded the relevant parts of the amended judgment.

## Standard of Review

Contempt orders not involving confinement may be reviewed by writ of mandamus. *In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (per curiam on reh'g); *see In re Look*, No. 01-02-00959-CV, 2003 WL 876650, at *2 (Tex. App.—Houston [1st Dist.] Mar. 5, 2003, orig. proceeding) (mem. op.) (concluding that contempt order providing for suspension of commitment was reviewable by petition for writ of mandamus). To be entitled to mandamus relief, a relator generally must demonstrate that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In an original proceeding challenging a contempt order, the relator has the burden to show that the order is void. *See In re Aslam*, 348 S.W.3d 299, 302 (Tex. App.—Fort Worth 2011, orig. proceeding) (citing *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009) (orig. proceeding)); *Snodgrass v. Snodgrass*, 332 S.W.3d 653, 663 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Because a contempt order is not reviewable by direct appeal, *Parham Family Ltd. P'ship v. Morgan*, 434 S.W.3d 774, 789 n.15 (Tex. App.—Houston [14th Dist.] 2014, no pet.), there is no adequate remedy by appeal, and the second prong of mandamus review is satisfied. *See In re Aslam*, 348 S.W.3d at 302.

## Contempt of Court

Contempt of court is broadly defined as disobedience to or disrespect of a court by acting in opposition to its authority. *In re Luther*, 620 S.W.3d 715, 721 (Tex. 2021); *Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). A judgment for civil constructive contempt[3] must be based on a violation of a court order. *Ex parte Lee*, 704 S.W.2d 15, 17 (Tex. 1986) (orig. proceeding); *see also* Tex. R. Civ. P. 692 (disobedience of injunction may be punishable by contempt). "Contempt is strong medicine—the alleged contemnor's very liberty is often at stake—and so it should be used only as a last resort." *In re Reece*, 341 S.W.3d at 364.

A contempt judgment may be either civil or criminal. *See id.* at 365; *In re Thompson*, No. 01-14-00235-CV, 2014 WL 6792031 *2 (Tex. App.—Houston [1st Dist.] Dec. 2, 2014, orig. proceeding) (mem. op.). A judgment that provides that the contemnor is to be committed unless and until he performs the affirmative act required by the court's order is a civil contempt order. *In re Mott*, 137 S.W.3d 870, 874 (Tex. App.—Houston [1st Dist.] 2004, orig. proceeding) (citing *Ex parte Johns*, 807 S.W.2d 768, 770 (Tex. App.—Dallas 1991, orig. proceeding)). Civil contempt is remedial, prospective, and coercive. *See In re Reece*, 341 S.W.3d at 365; *In re Bannwart*, 439 S.W.3d 417, 421 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (citing *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding) and *In re Houston*, 92 S.W.3d 870, 876 n.2 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding)). Release may be procured or commitment avoided altogether by compliance with the trial court's order. *See In re Bannwart*, 439 S.W.3d at 421 (citing *In re Houston*, 92 S.W.3d at 876 n.2). "A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey

---

[3] Contempt occurring outside the court's presence, as alleged here, is constructive contempt. *In re Reece*, 341 S.W.3d at 365.

some order of the court where such obedience will benefit an opposing litigant." *Ex parte Werblud*, 536 S.W.2d at 545. When civil contempt is imposed, the order "must spell out exactly what duties and obligations are imposed and what the contemnor can do to purge the contempt." *In re Houston*, 92 S.W.3d at 877.

In contrast to civil contempt, criminal contempt is punitive in that the sentence is not conditioned upon any future performance. Rather, the contemnor is being punished for past disobedience to a court order that constitutes an affront to the dignity and authority of the court. *See In re R.E.D.*, 278 S.W.3d 850, 855 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding); *In re Houston*, 92 S.W.3d at 876 n.2 (citing *Ex parte Werblud*, 536 S.W.2d at 545-46).

The order at issue provides that Donovan is to be committed, but suspends that sentence conditioned upon Donovan's timely compliance with the requirement to deposit a sum certain into the court's registry. Thus, the order is a coercive civil contempt order.

## Analysis

**A.    The contempt order is void because it imposes a single penalty for multiple contemptuous acts but at least one act cannot support coercive contempt.**

In part of Donovan's second issue, he contends, "[w]here one penalty is affixed for more than one act of contempt, and it is found that the relator could not be held in contempt for one of the acts, the whole judgment is tainted and is void." *Ex parte Werner*, 496 S.W.2d 121, 122 (Tex. App.—San Antonio 1973, orig. proceeding). In his third and fourth issues, Donovan challenges the legal sufficiency of the evidence to support several of the contemptuous acts found by the court.

In *In re Henry*, 154 S.W.3d 594 (Tex. 2005) (per curiam), the supreme court applied the principle cited by Donovan to a coercive civil contempt judgment.

There, a divorce decree ordered the relator to pay weekly child support, certain debts, and the real estate taxes due on the marital residence. *Id.* at 595. After the relator failed to comply with the decree, the trial court signed an order finding the relator guilty of contempt for failure to pay the past-due real estate taxes and of 359 separate acts of contempt for failure to pay child support. *Id.* The trial court imposed a criminal contempt sentence of confinement in the county jail for seventy-two hours and a civil contempt sentence requiring that the relator remain confined until he paid his ex-wife $30,141.42, which included $20,873 in past-due child support, $2,268 in interest, $4,640.42 in past-due property taxes, and $2,360 in attorney's fees. *Id.* at 596. The trial court suspended the sentence on the condition that the relator make weekly payments toward the full judgment and continue the previously ordered weekly child-support payment, but the trial court revoked the suspension in a separate commitment order signed on January 8, 2004, after the relator failed to comply with the suspension order's conditions. *Id.*

Like Donovan, the relator in *In re Henry* argued that the trial court's entire commitment order was void because it assessed one coercive punishment for all acts of civil contempt when at least one of those acts—the failure to pay past-due taxes—was not punishable by contempt. *Id.* at 598. The court agreed that the relator's obligation to pay property taxes as ordered in the divorce decree was not enforceable by contempt because it was a debt. *Id.* at 597-98 (citing Tex. Const. art. I, § 18). Further, the court concluded the order was void because it imposed a single coercive penalty for all contemptuous acts when one act could not legally support contempt:

> [T]he commitment order here does not assess separate penalties for each contemptuous act; rather, it requires Paul to pay a $30,141.42 lump sum to secure his freedom. This lump sum includes the past-due property taxes and associated penalties, and the commitment order confines Paul until he satisfies the full obligation. "If one punishment is assessed for multiple acts of contempt, and one of those acts is not

> punishable by contempt, the entire judgment is void." Because the trial court did not allocate the $30,141.42 judgment based on particular contemptuous acts, and because Paul's failure to pay past-due property taxes as required in the divorce decree is not punishable by coercive contempt, we hold that the trial court's entire civil commitment order is void.

*Id.* at 598 (internal citations omitted).

The supreme court has long acknowledged and applied this rule. *See, e.g.*, *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986); *Ex parte Lee*, 704 S.W.2d at 17; *Ex parte Goad*, 690 S.W.2d 894, 895 (Tex. 1985). We have as well. *See, e.g.*, *Ex parte Herrera*, 820 S.W.2d 54, 56-57 (Tex. App.—Houston [14th Dist.] 1991, orig. proceeding); *Ex parte Carpenter*, 566 S.W.2d 123, 124 (Tex. App.—Houston [14th Dist.] 1978, orig. proceeding); *In re Newton*, 534 S.W.2d 194, 195 (Tex. App.—Houston [14th Dist.] 1976, orig. proceeding). In a case where more than one act of contempt is alleged, one of our sister courts has stated that the proper procedure is for the movant to offer evidence as to each of the separate acts, and the court should make findings as to each one and fix separately the punishment assessed for each act. *Ex parte Werner*, 496 S.W.2d at 122 (citing *Ex parte Genecov*, 186 S.W.2d 225 (Tex. 1945)).

A trial court's assessment of a single penalty for multiple contemptuous acts limits an appellate court's ability to uphold a contempt order in the event one or more underlying acts are determined to be unsupported. *In re Henry* illustrates this point, where the court concluded that the contempt judgment could not be reformed to sever the void portions from the valid portions because separate penalties were not imposed for each violation. *In re Henry*, 154 S.W.3d at 598. "[T]he commitment order does not allocate the $30,131.42 judgment based on separate contemptuous acts and contains no findings to support a lesser coercive contempt sentence. Accordingly, we are unable to reform the civil commitment order or sever any

portion thereof. Had the commitment order in this case itemized the contemptuous acts and identified a discrete dollar amount for each failure to pay, our conclusion might be different." *Id.* (footnote omitted).

Applying *In re Henry* and like cases, for us to uphold the present contempt order we must conclude that all twenty-two acts of contempt found by the court are supported in the record and that each of them constitutes a violation of the injunctions. Real parties' theory that violations occurred is based on Donovan's alleged commingling of estate funds with his personal funds, followed by his numerous personal expenditures from the commingled account or accounts after the injunction became effective on September 10, 2021.

      1.    *Donovan had a duty to avoid commingling estate and personal assets.*

Upon death, a decedent's estate immediately vests in the devisees, legatees, and heirs at law of the estate, subject to payment of the decedent's debts. *See* Tex. Est. Code § 101.001. Managing or administering a decedent's estate is an executor's core function. *See Mohseni v. Hartman*, 363 S.W.3d 652, 656 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Because an executor holds and manages property interests of others, he or she serves as a trustee and is held to the highest standards of conduct. *Id.*; *Geeslin v. McElhenney*, 788 S.W.2d 683, 684-85 (Tex. App.—Austin 1990, no writ). As trustee of an estate's property, an executor is subject to the fiduciary standards applicable to all trustees. *Humane Soc'y of Austin & Travis Cnty. v. Austin Nat'l Bank*, 531 S.W.2d 574, 577 (Tex. 1975); *see Ditta v. Conte*, 298 S.W.3d 187, 191 (Tex. 2009) ("High fiduciary standards are imposed upon trustees, who must handle trust property solely for the beneficiaries' benefit."). An independent executor owes fiduciary duties not only to the estate but to the estate's beneficiaries as well. *See Humane Soc'y*, 531 S.W.2d at 577; *Mohseni*, 363 S.W.3d at 657; *see also Huie v. DeShazo*, 922 S.W.2d 920, 922-23 (Tex. 1996) (holding that

12

relationship between executor and estate's beneficiaries is one that gives rise to fiduciary duty as matter of law).

The universe of an executor's fiduciary obligations includes a duty to exercise reasonable care in the administration of the estate property, Tex. Est. Code § 351.101 ("An executor or administrator of an estate shall take care of estate property as a prudent person would take of that person's own property . . . ."), and a duty to avoid commingling of estate funds with non-estate assets, including the executor's personal property. *See Punts v. Wilson*, 137 S.W.3d 889, 892 (Tex. App.—Texarkana 2004, no pet.); *McAdams v. McAdams*, No. 07-99-00082-CV, 2000 WL 329578, *6 (Tex. App.—Amarillo Mar. 28, 2000, no pet.) (mem. op., not designated for publication); *see Geeslin*, 788 S.W.2d at 686-87.

Donovan served as the independent executor from March 26, 2019 until September 10, 2021, when the judgment vacated the March 26, 2019 order. During his time as executor, he had the duty to avoid commingling estate property with his own. Further, after September 10, 2021, the injunctions in the original and amended judgments prohibited him from conveying or transferring all estate assets in his possession or control, except to turn them over to the successor administrator.

Commingling personal assets with trust assets constitutes a breach of trust, and courts have developed certain principles concerning the identification of trust property when commingling occurs. For example, a party alleging that a trustee commingled funds has the initial burden to show that commingling has in fact occurred. *See Sheldon Petroleum Co. v. Peirce*, 546 S.W.2d 954, 958 (Tex. App.—Dallas 1977, no writ); *Cole v. Wadsworth*, 326 S.W.2d 928, 931 (Tex. App.—Eastland 1959, writ ref'd n.r.e.). When it is shown that a trustee commingled trust property with his own, the trustee then has the burden to distinguish his or her funds from those of the beneficiary, and if the trustee cannot do so, the whole commingled

13

fund or the property purchased with that fund becomes subject to a trust in favor of the beneficiary. *See Eaton v. Husted*, 172 S.W.2d 493, 497-98 (Tex. 1943); *Logan v. Logan*, 156 S.W.2d 507, 510-11 (Tex. 1941); *In re Est. of Shultz*, No. 11-21-00177-CV, 2022 WL 4099404, at \*10 (Tex. App.—Eastland Sept. 8, 2022, no pet.) (mem. op.); *W.L. Lindemann Operating Co. v. Strange*, 256 S.W.3d 766, 782 (Tex. App.—Fort Worth 2008, pet. denied); *In re Est. of Brimberry*, No. 12-04-00154-CV, 2006 WL 861483, at \*5 (Tex. App.—Tyler Mar. 31, 2006, pet. denied) (mem. op.); *Gen. Ass'n of Davidian Seventh Day Adventists, Inc. v. Gen. Ass'n of Davidian Seventh Day Adventists*, 410 S.W.2d 256, 259 (Tex. App.—Waco 1966, writ ref'd n.r.e.); *Cole*, 326 S.W.2d at 931 (when it has been established that an administrator has purchased property with his funds comingled with funds of the estate, then the administrator has the burden of showing what portion is his and if he does not then the entire property so purchased will be awarded to the estate). This tracing burden belongs to the trustee because it would be inequitable to place the burden on the party asserting the trust when the trustee has wrongfully commingled his own funds with trust funds, especially when the proof necessary to distinguish the funds is peculiarly within the knowledge and possession of the trustee. *Logan*, 156 S.W.2d at 510-11.

When a trustee withdraws from an improperly commingled fund, however, the trustee is presumed to have withdrawn or expended his own money first. *Cont'l Nat'l Bank v. Weems*, 6 S.W. 802, 806 (Tex. 1888); *In re Est. of Brimberry*, 2006 WL 861483, at \*5; *Moody v. Pitts*, 708 S.W.2d 930, 937 (Tex. App.—Corpus Christi-Edinburg 1986, no writ); *Batmanis v. Batmanis*, 600 S.W.2d 887, 890 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). This is true so long as sufficient funds remain in the commingled account to cover the amount of trust property or to

14

identify that which belongs to the trust. *See Weems*, 6 S.W. at 805-06; *Barrington v. Barrington*, 290 S.W.2d 297, 302 (Tex. App.—Texarkana 1956, no writ).

2.      *Donovan improperly commingled funds in some accounts.*

The initial burden to establish commingling fell to Denise and Darla, as they sought contempt and alleged that Donovan willfully disobeyed the injunctions by commingling estate assets and spending from the commingled accounts. *Sheldon Petroleum Co.*, 546 S.W.2d at 958 (stating it is incumbent upon the party asserting the trust to show that funds were commingled); *see Ex parte Chambers*, 898 S.W.2d at 266 (movant for contempt has burden of proof).

The record evidence focused on how Donovan handled three categories of estate assets in dispute: (1) three bank accounts (collectively, "Jack's Accounts"); (2) $288,000 cash in Jack's safe; and (3) $380,000 in proceeds from the sale of Jack's shop and other personal property. The first category of estate assets—Jack's Accounts—are identified in the amended judgment as a BBVA Compass checking account number -6783, a TD Ameritrade Stocks account number -4082, and an Amegy account number -0093. The balance of Jack's Accounts at his death was found to be $535,201.63 and was awarded to the estate. Although Jack's Accounts are specifically identified in the amended judgment—which ordered Donovan to turnover that amount to the successor administrator—the $288,000 cash from Jack's safe and the $380,000 shop and property proceeds are not mentioned in the judgment.

In their motion, Denise and Darla argued that Donovan commingled the three categories of estate assets with one or more of his own three accounts: the Brokerage Account, the IRA Account, or the Checking Account. In the contempt order, the trial court found that Donovan made numerous conveyances or expenditures from his three accounts in violation of the injunctions. We first examine whether the

15

evidence establishes commingling occurred as to each of Donovan's accounts. While he admits he commingled estate funds with his personal funds in the Checking Account, he insists he commingled no other estate assets.

### a. Checking Account

Donovan listed $288,000 cash in Jack's safe as an estate asset on the inventory, appraisal, and list of claims filed March 27, 2019. Donovan admitted that between 2019 and 2020, he deposited approximately $85,500 of the $288,000 into his Checking Account, which is his personal checking account.[4] Donovan spent the rest of the $288,000 before trial. The only spent portion for which he could account was $18,300 in funeral and burial expenses for Jack. Although Donovan opened a new checking account for the estate after Jack's death, Donovan did not deposit any of the $288,000 found in Jack's safe into the estate checking account. In his petition for writ of mandamus, Donovan acknowledges that he commingled cash from Jack's safe with his personal funds in his Checking Account. We agree, as the evidence establishes conclusively that Donovan commingled estate funds with his personal funds in the Checking Account during the time he served as independent executor.

### b. Brokerage Account

Donovan opened the Brokerage Account after Jack's death. Donovan deposited into his Brokerage Account the balance of Jack's Accounts at death, $535,201.63. Donovan also deposited into his Brokerage Account the collective balance of three other accounts ($244,200), which was awarded to Denise and Darla and is not an estate asset. According to the bank statements in our record, the balance of the Brokerage Account was $225,047.60 at the beginning of 2021; and the balance

---

[4] Real parties established that during 2019 and 2020, Donovan deposited $95,000 in cash into his Checking Account. Donovan admitted that approximately 90% of that money—or $85,500—came from the cash in Jack's safe.

was $89,903.52 on September 1, 2021. The September 2021 Brokerage Account statement showed that as of September 30, 2021, Donovan had purchased $1,494,055.64 worth of securities and had sold $2,140,623.25 worth of securities in 2021. Donovan acknowledged that he maintained personal funds in his Brokerage Account. Thus, we conclude that the evidence supports an implied finding that Donovan commingled estate funds with non-estate funds in the Brokerage Account during the time he served as independent executor.

### c.    IRA Account

The only evidence relating to Donovan's IRA Account was that Donovan transferred $9,000 on October 1, 2021 and another $9,000 on October 6, 2021 from the IRA Account to his personal account at Bay Area Credit Union. But the record includes no evidence that Donovan ever deposited estate money into the IRA Account or transferred money from another commingled account into the IRA Account. Real parties therefore did not establish that Donovan commingled estate assets with his personal assets in the IRA Account.

### 3.    *Some acts cannot support contempt.*

Donovan contends the trial court's entire contempt order is void because it assesses one coercive punishment for all acts of civil contempt when at least one of those acts is not punishable by contempt. We agree. Of the twenty-two contemptuous acts found by the court, we conclude only certain withdrawals or expenditures from the Checking Account can support findings that Donovan violated the September 27 injunction.

### a.    IRA Account

The trial court found that the two $9,000 transfers from the IRA Account in October 2021 violated the court's injunction by conveying or expending assets

belonging to the estate (paragraphs 2(d) and 2(e) of the contempt order). In parts of his second, third, and fourth issues, Donovan contends these two transactions cannot support contempt because the IRA Account was not commingled; he says only the Checking Account contained commingled funds. As we have concluded above, there exists no evidence that Donovan commingled estate funds with his personal funds in the IRA Account. Because the IRA Account was not commingled with estate assets, there is no evidence that either $9,000 payment conveyed or expended estate assets. We therefore agree that the two payments from the IRA Account identified in the contempt order cannot support a violation of the injunction.

### b. Brokerage Account

The trial court found that Donovan made four transfers out of the Brokerage Account in violation of the injunction (paragraphs 1(a), 2(a), 2(b), and 2(c) of the contempt order). In his fourth issue, Donovan challenges two of them on no-evidence grounds: a $250,000 transfer on September 28 and a $35,000 transfer on October 13. In part of his third issue, Donovan further contends there is no evidence that he spent any commingled funds after trial.

We agree in part with his latter point as it pertains to the Brokerage Account. When a trustee has improperly commingled funds and has expended funds from the commingled whole, the trustee is presumed to have expended his personal money first. *In re Est. of Brimberry*, 2006 WL 861483, at *5; *Batmanis*, 600 S.W.2d at 890. If sufficient funds remain in the commingled account to cover the amount of estate funds deposited therein, a court cannot find that estate funds have been spent because the funds withdrawn presumptively belong to the trustee. *See Weems*, 6 S.W. at 805-06; *Barrington*, 290 S.W.2d at 302.

Applying this reasoning, there is no indication that Donovan expended or conveyed estate funds from the Brokerage Account after September 10, 2021. The

18

only estate money deposited into the Brokerage Account was $535,201.63 from Jack's Accounts. On December 17, 2021, Donovan transferred $535,201.63 from the Brokerage Account to his Checking Account and then immediately issued a check in the identical amount to the county clerk for deposit into the registry to supersede part of the amended judgment. The Checking Account balance was sufficient to cover the full $535,201.63 in estate funds when Donovan transferred that amount to the court registry. For that reason, the $250,000 and $35,000 transfers Donovan challenges in his fourth issue—both of which predated his December 17 withdrawal for the registry deposit—presumptively consisted of his personal funds. Therefore, a court could not find that those conveyances violated the injunction.

### c. Checking Account

Donovan's expenditures from the Checking Account are another matter, however. The court found that Donovan violated the injunctions by sixteen conveyances or transfers from the Checking Account while the injunctions were in effect. Admitting he commingled estate funds with personal funds in the Checking Account, Donovan argues in issue three that he spent no estate funds after trial. We disagree.

As Donovan correctly observes, "no evidence was presented to trace what happened to the assets that were commingled." We agree no tracing evidence was presented, but it was his burden to present that evidence. *See Eaton*, 172 S.W.2d at 498; *Est. of Lopez*, 2021 WL 2252138, at *3 (once commingling is established, it is fiduciary's burden to distinguish personal funds); *Cole*, 326 S.W.2d at 931. He failed in his burden.

According to the bank statements, the balance of Donovan's Checking Account as of the close of business September 10, 2021 was $77,666.57. At the close of business on September 27, 2021, the balance was $66,698.76. Donovan's

19

$250,000 transfer into the Checking Account the following day brought the Checking Account balance to $316,698.76. On November 10, he wrote a $186,409.43 check for deposit into the district court registry.[5] He otherwise spent rather lavishly from the commingled Checking Account on various personal property and other expenses—including gold, silver, and a recreational vehicle—until the balance by December 6 was reduced to $14,540.86, and the balance as of the date of the contempt hearing was merely $5,000.

Denise and Darla proved that Donovan used commingled funds from the Checking Account to buy specific property. The property he acquired then became subject to the trust. *See Eaton*, 172 S.W.2d at 497-98; *In re Est. of Shultz*, 2022 WL 4099404, at \*10; *W.L. Lindemann Operating Co.*, 256 S.W.3d at 782; *In re Est. of Brimberry*, 2006 WL 861483, at \*5; *Gen. Ass'n of Davidian Seventh Day Adventists, Inc.*, 410 S.W.2d at 259; *Cole*, 326 S.W.2d at 931. Because the account contained commingled funds, it was Donovan's burden to demonstrate what part, if any, of the payments came from his personal funds. *See Eaton*, 172 S.W.2d at 498. He offered no evidence in this regard. Additionally, unlike with the Brokerage Account, Donovan did not retain sufficient money in his Checking Account to cover the $85,500 in estate funds he admittedly commingled with his personal funds in that account. Thus, Donovan does not benefit from the presumption that his personal funds were the first to be spent. *Cf. Weems*, 6 S.W. at 805-06; *Barrington*, 290 S.W.2d at 302. Donovan admitted that all conveyances or transfers from the Checking Account and identified on the contempt order occurred. Fifteen of them occurred between September 27, 2021 and November 12, 2021. Because Donovan failed to prove that estate funds were not used in the cited conveyances and transfers,

---

[5] At the time of his death, Jack had four other accounts that are currently in litigation in district court and are not at issue in the present action.

the trial court did not abuse its discretion in finding that the payments after September 27 violated the injunction. We conclude that the trial court's findings regarding the Checking Account transfers after September 27 are supported by evidence and may support a coercive civil contempt order.

### 4. *The contempt order is void.*

The court assessed one coercive penalty for all twenty-two contemptuous acts, requiring Donovan to pay $287,457 to purge himself of contempt. *See In re Henry*, 154 S.W.3d at 598. "'If one punishment is assessed for multiple acts of contempt, and one of those acts is not punishable by contempt, the entire judgment is void.'" *Id.* (quoting *Ex parte Davila*, 718 S.W.2d at 282). Because Donovan's challenged transfers from his IRA Account and Brokerage Account are not punishable by coercive contempt, we hold that the trial court's entire civil contempt order is void. *Id.*; *Ex parte Werner*, 496 S.W.2d at 122. Further, because the order does not allocate the $287,457 amount based on separate contemptuous acts and otherwise contains no findings to support a lesser coercive contempt penalty, we are unable to reform the order or sever any valid portion from the remainder. *In re Henry*, 154 S.W.3d at 598.

## B. The contempt order is void because it is based in part on a superseded judgment.

Donovan raises two additional voidness challenges to the order. Because the trial court retains jurisdiction to enforce its September 27 judgment by contempt, and because nothing about our opinion precludes the trial court from issuing a new contempt order,[6] we address Donovan's alternative arguments in the interest of judicial economy to avoid "condemning the parties to waste their time and money—

_____

[6] *In re Henry*, 154 S.W.3d at 598 n.3.

and the trial court and (if appealed) this Court to waste scarce public resources—on arguing and considering" likely repetitive issues that have been raised and briefed in this proceeding.[7]

In his first issue, Donovan argues that the contempt order is void because it exceeds the maximum allowable fine. Citing Government Code section 21.002, Donovan says the court may not punish him for contempt in an amount exceeding $500 or confinement in the county jail for not more than six months, or both. *See* Tex. Gov't Code § 21.002(b). According to Donovan, the court lacked jurisdiction to assess a fine of more than $500 for each contemptuous act, resulting in a void order. *See Rosser v. Squier*, 902 S.W.2d 962, 962 (Tex. 1995) (per curiam).

Donovan's reliance on section 21.002(b) is misplaced. Courts have construed that section as identifying punishments allowed for *criminal* contempt; coercive *civil* contempt orders are not limited by section 21.002(b). *See Cadle Co. v. Lobingier*, 50 S.W.3d 662, 668 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Ex parte Shaklee*, 939 S.W.2d 144, 145 n.2 (Tex. 1997) (orig. proceeding), *In re Cantu*, 961 S.W.2d 482, 489 (Tex. App.—Corpus Christi-Edinburg 1997, orig. proceeding), and *Ex parte Hawkins*, 885 S.W.2d 586, 588 (Tex. App.—El Paso 1994, orig. proceeding)); *see also* Tex. Gov't Code § 21.002(e) (providing that section 21.002 "does not affect a court's power to confine a contemnor to compel him to obey a

---

[7] *Clay Expl., Inc. v. Santa Rosa Operating, LLC*, 442 S.W.3d 795, 802-03 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Wichita County v. Hart*, 917 S.W.2d 779, 783-84 (Tex. 1996) (addressing issue not essential to disposition in interest of judicial economy); and *Lone Star Gas Co. v. R.R. Comm'n*, 767 S.W.2d 709, 711 (Tex. 1989) ("Although the rules [including predecessor to 47.1] do not require or contemplate advisory opinions on issues not essential to the final disposition of a case, the rules do mandate full consideration of all issues raised to move the case as far as possible toward final disposition.")); *see also Tex. Comm'n on Env't Quality v. Maverick County*, 642 S.W.3d 537, 549 (Tex. 2022) (holding court of appeals had jurisdiction to decide briefed questions that were not abstract and that impacted parties rights in interest of judicial economy).

court order"). The trial court's order at issue is a coercive civil contempt order to which section 21.002(b) does not apply. The order is not void for the reason Donovan asserts in his first issue, and we overrule it.

In part of his second issue, Donovan notes that two of the contemptuous acts found by the trial court occurred between the September 10 judgment and the September 27 judgment. He says those findings are void because the September 27 judgment superseded the September 10 judgment. According to Donovan, the trial court lacked authority to hold him in contempt for violating an injunction that was no longer of any force or effect.

Only one final judgment shall be rendered in any cause. Tex. R. Civ. P. 301. When a judgment is amended to correct judicial errors, the amended judgment supersedes the original judgment and becomes a new judgment. *Navigant Consulting, Inc. v. Taulman*, No. 05-10-00775-CV, 2012 WL 219338, at \*4 (Tex. App.—Dallas Jan. 25, 2012, no pet.) (mem. op.); *see B&M Mach. Co. v. Avionic Enters., Inc.*, 566 S.W.2d 901, 902 (Tex. 1978) (per curiam); *Wilmer-Hutchins Indep. Sch. Dist. v. Blackwell*, 529 S.W.2d 575, 577 (Tex. App.—Dallas 1975, writ dism'd). Here, the September 27 amended judgment did not contain merely clerical corrections. Thus, it superseded the September 10 judgment and became the court's new and only final judgment.

Darla and Denise assert several points in response. First, the trial court did not sign the September 27 judgment for any reason related to the injunctive language, but rather to clarify other issues. Further, they correctly remind us that they did not seek to hold Donovan in violation of the September 10 judgment for his acts occurring while the September 27 judgment was in effect; the contempt order finds him guilty of violating the September 10 judgment only for two acts occurring before the September 27 judgment. As real parties reason, accepting Donovan's

23

view would mean that the September 10 injunction had no effect whatsoever simply because it happened to be amended later for reasons unrelated to the injunction, and relief is thus unattainable for Donovan's intentional wrongdoing before the September 27 judgment.

Real parties' argument finds support in several cases. *See In re Mann*, 162 S.W.3d 429, 433 (Tex. App.—Fort Worth 2005, orig. proceeding); *Ex parte Thompson*, 803 S.W.2d 876, 877 (Tex. App.—Corpus Christi-Edinburg 1991, orig. proceeding); *Ex parte Shaver*, 597 S.W.2d 498, 499-500 (Tex. App.—Dallas 1980, orig. proceeding); *Ex parte Davis*, 597 S.W.2d 501, 502 (Tex. App.—Dallas 1980, orig. proceeding).

In *Ex parte Shaver*, the court considered the effect of a final divorce decree on the enforceability of a temporary support order. The judge found the relator in contempt for failing to pay support as required by an April 1979 temporary order. *Ex parte Shaver*, 597 S.W.2d at 499. In February 1980, the court rendered judgment on the merits of the divorce, but the relator was not arrested and incarcerated for contempt until after rendition of judgment. In his habeas petition, the relator argued that the contempt order, though valid when signed, became void upon the court's rendition of final judgment. *Id.* The court of appeals disagreed, holding that rendition of the final divorce decree did not nullify the temporary order with respect to past due payments. *Id.* at 500. As the court reasoned, the final divorce decree superseded the temporary order with respect to future payments, but the obligation for past support continued unless modified by the final decree. *Id.* "Rendition of a divorce decree providing for support payments after divorce is not inconsistent with a continuing obligation to make the payments past due under the temporary order, and neither is it inconsistent with an order finding the relator in contempt and requiring him to be confined in jail until those payments should be made." *Id.*

In *In re Mann*, the court of appeals held a contempt order was void because the trial court found the relator in contempt for violating an order other than the one identified in the motion for contempt. *In re Mann*, 162 S.W.3d at 432. The trial court's order found the relator in contempt of a modified support order, but the movant's motion cited only alleged violations of the original support order, not the modified order. Although the appellate court held the order was void on due process grounds, the court also stated that a "correct" motion for contempt.would have alleged violations of both the first and second child support orders. A correct motion would have included the relevant portions of both child support orders, not just the original order. Had Dawn filed a correct motion, the trial court's judgment would not be void." *Id.* at 433 (citing *Ex parte Thompson*, 803 S.W.2d at 877).

Here, real parties' motion for contempt against Donovan did precisely what the courts in *In re Mann* and *Ex parte Thompson* said would constitute a "correct" motion and, if granted, would result in a valid contempt order. Donovan was enjoined by the September 10 judgment from the date of that judgment until September 27. The motion for contempt segregated those violations alleged to have occurred while the September 10 judgment was in effect from those violations alleged to have occurred after the September 27 judgment. The contempt order likewise distinguishes between the contemptuous acts occurring between September 10 and September 27 and those occurring after September 27.

Donovan's position, however, has support from this court. In *In re Stenson*, No. 14-06-00094-CV, 2006 WL 1331147 (Tex. App.—Houston [14th Dist.] May 11, 2006, orig. proceeding) (mem. op.), the trial court signed a final divorce decree and amended it twice, once in February 2005 (first amended decree) and later in August 2005 (second amended decree). The court signed an order holding the relator in contempt for violating both the February and August judgments. Not unlike the

25

present case, six of the ten violations found by the court were based on the February judgment and occurred before the August judgment was signed. *Id.* at *2-3. Like Donovan, the relator argued that the contempt order was void because it was based in part on violations of the February judgment when that judgment had been superseded by the August judgment. This court agreed, relying in part on a prior panel's determination that "a contempt order based on a superseded decree is void." *Id.* at *3 (citing *Ex parte Smith*, No. 14-96-00195-CV, 1996 WL 283063, at *2 (Tex. App.—Houston [14th Dist.] May 30, 1996, orig. proceeding) (not designated for publication), and *Ex parte Deckert*, 559 S.W.2d 847, 849 (Tex. App.—Houston [1st Dist.] 1977, orig. proceeding)). We stated:

> Once the trial court signed the August decree—on August 12, 2005—the February decree was superseded and no longer in effect. *See* [*Ex parte Smith*, 1996 WL 2093063, at *2]; *see also Ferguson v. Naylor*, 860 S.W.2d 123, 127 (Tex. App.—Amarillo 1993, writ denied) ("Once a judgment has been vacated and reformed, it is superseded; the original judgment is effectively 'dead,'. . . ."). The August decree was the enforceable decree in the case at the time of the hearing on Katherine's motion, yet the court's contempt order holds relator in contempt for failing to make payments under the superseded February decree. And, as relator contends, he cannot be incarcerated for failing to pay sums owed prior to the date of an enforceable decree. *See Ex parte Guetersloh*, 935 S.W.2d 110, 111 (Tex. 1996) (orig. proceeding) (stating that an alleged contemnor cannot be held in constructive contempt for actions taken before the court's order is signed). Because the contempt order in this case is based in large part on acts occurring under an unenforceable decree and imposes punishment for acts occurring prior to the final decree being signed, it is void.

*Id.* (internal footnotes omitted). The court also added that, even though relator's child support obligations at issue were identical in the February and August judgments, because the August judgment was the final decree enforceable by

26

contempt, relator could not be incarcerated for acts occurring prior to the signing of the August judgment. *Id.* at \*3, n.2.

Under the doctrine of horizontal stare decisis, a court owes respect to its own precedents. *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022); *Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc). Three-judge panels of a court must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision. *Mitschke*, 645 S.W.3d at 256.

We are bound by this court's holding in *In re Stenson*, and today's case is not materially distinguishable. The trial court signed two judgments, each containing identical injunctive language. Real parties' motion for contempt segregated Donovan's acts occurring while the September 10 judgment was in effect from those occurring after September 27. In its order, the trial court found that Donovan's September 15 and 16 transfers violated only the September 10 judgment and not the September 27 judgment. Accordingly, we hold that the trial court's findings that Donovan's September 15 and 16 transfers from the Checking Account are void because they are based on a superseded judgment. *In re Stenson*, 2006 WL 1331147, at \*3. Because the order's single penalty prevents us from reforming the order, we conclude the entire order is void for this additional reason. *In re Henry*, 154 S.W.3d at 598.

## C. Donovan's remaining issues or unpreserved or inadequately briefed.

In his fourth issue, Donovan raises a general challenge to the amount of the penalty, noting that the sum of the multiple violations found do not total $287,457, the amount Donovan was required to deposit. He offers no substantive argument or authority to support this issue, so we overrule it as inadequately briefed. *See* Tex. R. App. P. 38.1.

Finally, in Donovan's fifth issue, he contends that he cannot be compelled to deposit additional funds into the registry because he has already superseded the September 27 judgment by a cash deposit in lieu of bond. Donovan did not present this argument to the trial judge. "The extraordinary nature of the mandamus remedy and the requirement that a party seeking mandamus relief exercise diligence both mandate that arguments not presented to the trial court cannot first be considered in an original proceeding seeking mandamus." *In re Floyd*, No. 05-16-00491-CV, 2016 WL 2353874, at \*1 (Tex. App.—Dallas May 3, 2016, orig. proceeding) (mem. op.); *see In re Abney*, 486 S.W.3d 135, 138 (Tex. App.—Amarillo 2016, orig. proceeding) ("arguments withheld from the trial court will not first be considered in a petition for writ of mandamus").

Donovan was required to first raise this argument in the trial court before seeking relief in this court, and because he failed to do so, his complaint is not preserved for our review. *See* Tex. R. App. P. 33.1(a)(1)(A); *Moore v. Wood*, 809 S.W.2d 621, 622-24 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding) (relator's argument in mandamus petition was preserved because it was presented in response to motion in trial court); *see also In re MHI P'ship, Ltd.*, No. 14-07-00851-CV, 2008 WL 2262157, at \*8 (Tex. App.—Houston [14th Dist.] May 29, 2008, orig. proceeding) (mem. op.) (refusing to address real party in interest's arguments in mandamus proceeding because they did not raise arguments in trial court in response to motion to compel arbitration).

## Conclusion

We hold that the contempt order is void and conditionally grant Donovan's petition for writ of mandamus. We direct the trial court to vacate the contempt order and the writ will issue only if the court fails to comply. We lift our July 1, 2022 stay order.

28

/s/    Kevin Jewell
Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan.